Parker, C.
J. The decree offered in this case, as conclusive evidence of a violation of blockade by the vessel insured, cannot be held so to operate. Indeed, it may be doubtful whether it ought to have been admitted at all.
Waiving all question as to the character of the government, under which the seizure of the vessel and the decree of forfeiture took place, it certainly is essentially defective when attempted to be applied to this contract of insurance.
For it does not appear that any libel was filed, any monition issued, any hearing had, or that any of those formalities had taken place, which are necessary to give a conclusive operation to decrees of foreign courts. For aught that appears from the copy of the proceedings before us, the forfeiture was decreed by mere arbitrary power, without any trial ; and that some of the forms of justice, used in civilized countries, had been assumed, without any regard to the substantial requisites of a judicial inquiry.†
Considering the decree, then, as not conclusive, the facts, which it purports to establish, are abundantly disproved by the other testimony *258 in the case ; so that the seizure of the vessel must be taken to have been an act of unjustifiable violence, for which the underwriters are undoubtedly answerable.
[*296] * The question, which the Court thought required time for deliberation, relates to the purchase of the vessel made by the master at the sale ordered by the government, which caused her to be seized.
The counsel for the defendants have contended, that the purchase must be taken to have been for the benefit of the assured, and that the effect of it is to confine the plaintiffs, in their recovery, to the sum paid for the vessel by the master. The case of Havelock vs. Rockwood (1), cited in support of this argument, decides, that, where the owner has purchased his vessel, and will not abandon her, he shall not recover for a total loss, even after a hostile capture and a sale of the vessel after condemnation.' The same principle has been adopted with us, in the case of Oliver vs. The Newburyport Insurance Company. (2)
But in those cases the former owner had reacquired possession oí his property, and was considered as holding it by his original title. It has not been decided, that, when a total loss has happened within the terms of the policy, the right to abandon shall be divested by an unauthorized purchase of the master, avowedly made on his own account, and not on account of the owners. Perhaps the owners may / reclaim their vessel, purchased under such circumstances, having a right to consider the master as their agent. But, unless they had given previous authority, or had subsequently ratified his act by accepting the vessel, they could not be obliged to relinquish their claim upon the underwriters for a total loss.
In this case, there is no evidence of any authority given to the master to purchase, or of any assent of the owners after they knew of the purchase. On the contrary, it is testified, that he purchased entirely on his own account, and afterwards sold her for his own benefit.
We see no ground, therefore, for confining the plaintiffs to a partial loss ; they having seasonably abandoned, upon information of the fact, that the vessel was seized and the voyage broken up.

Defendants defaulted.

 The sentence of a prize court is binding, although it appear on the face of the sentence that the prize court arrived at the conclusion through the medium of rules of evidence and rules of presumption established only by the particular ordinances of their own country, and not admissible on general principles. Bolton vs Gladstone, 3 East, 155. — 2 Taunt. 85 — Barring vs. R. Ex. Ins. Co., 5 East, 99. — 1 Phil. Ev. 348 — 2 N. Rep. 489. — 3 B. & P. 216, 526, 545. — Hughes, 313.

 8 D. & E. 268

 8 Mass. Rep. 402.