## Case No. 2,179.

### BURNHAM v. WEBSTER.

[1 Woodb.· & M. 172.] [1]

Circuit Court, D. Maine.    May Term, 1846.

EVIDENCE—IMPEACHING FOREIGN JUDGMENT—RES JUDICATA.

1. Where a suit is brought on a note, and the defendant offers in evidence to bar it a former judgment in a foreign court, where the writ counted on this and another note, and the judgment was entered upon the others, but on this the defendant was discharged, or went without day, it was *held*, that this foreign judgment was only prima facie evidence in ·favor of what it decided, and that the plaintiffs in this case might prove, that the note, now in suit, was withdrawn in the trial abroad and not passed on by the jury or court, and, in that event, it was not barred by the foreign judgment.

[Cited in Allen v. Blunt, Case No. 217; Folger v. The Robert G. Shaw, Id. 4,899; Hilton v. Guyott, 42 Fed. 255. Disapproved in McMullen v. Richie, 41 Fed. 503, 504.]

2. Judgments, foreign or domestic, ought not to bar subsequent suits, generally, unless between the same parties or their privies, and for the same matter, before and once actually litigated and decided on by the court.

[Cited in Allen v. Blunt, Case No. 217; Parkhurst v. Kinsman, Id. 10,761; Ex parte Snow, Id. 13,143; Wilkes v. Dinsman, 7 How. (48 U. S.) 123.]

3. The force of former judgments between the same parties, whether foreign or domestic, or in different states of the Union, and whether in personam, or in rem, considered.

[Cited in Hilton v. Guyott, 42 Fed. 255.]

At law. This was an action of assumpsit [by Noah Burnham against Ebenezer Webster] on a promissory note, tried here May term, 1845, before the district judge. After testimony by the plaintiff, tending to establish the liability of the defendant, the latter offered in evidence a copy of a judgment, rendered in the province of New Brunswick, in which the parties were the same as in this case, and this same note, with others, was declared on, and a verdict and judgment rendered for the plaintiff on the others only, and as to this, no verdict returned, but an entry in the record or judgment that the defendant go without day. The plaintiff then proposed to prove by witnesses, that before the case in New Brunswick was submitted to the jury, the plaintiff withdrew the note, now in suit, and that it was by agreement not submitted to the consideration of the court or jury, but the counts on it should be regarded as stricken out. That hence no verdict was rendered on it, and any entry-in the record of the judgment or concerning it

¹ [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

was by mistake or inadvertence. But this evidence was ruled out as inadmissible, and a verdict taken pro forma for the defendant, subject to the opinion of the court on the admissibility of that evidence. [Plaintiff moved for a new trial, which was granted.

[For decision sustaining demurrer to the replication, see Case No. 2,178, preceding.]

Howard & Shepley, for plaintiffs.
Mr. Rand, for defendant.

WOODBURY, Circuit Justice. It has been contended by the counsel for the plaintiff in this case, that the record from New Brunswick does not contain enough to show that a judgment was actually rendered there against the plaintiff on the note now in suit. But according to the best forms of judgments, what is stated here is a substantial portion of them, where they are rendered as to part for the plaintiff. and as to another part for the defendant; and it contains enough to cover the decision. Thus in Fowler v. Tappenden, Lil. Ent. 475, that part of the judgment in favor of the defendant is merely —"It is also considered, that the said John Toppender, &c., be in mercy for their false plea against the said John Fowler, &c., as to the trespass aforesaid, whereof the said John Fowler, &c., are above in form aforesaid· acquitted; and the same John Fowler, &c., do go thereof without day." So page 508 of the same book, in the case of Dummer v. Fitch.

The next question then is, whether the judgment so rendered in this record for the defendant can be disproved or invalidated by parol evidence, so as to re-open any part of it for further consideration. The distinctions on this subject are several in number; and some of them are well settled; while others are much controverted. Firstly. It is an elementary principle, that a domestic judgment, that is, one under the same government, if between the same parties and on the·same point, is conclusive, and cannot be avoided or re-opened by parol evidence. When open to a writ of error, or appeal, or review, or new trial, those modes of relief can be pursued, and the judgment in those ways changed for certain causes, which need not be specified, and on parol evidence often in each of them, except in a writ of error. 2 N. H. 65, 128. But when such a judgment is sued in an action of debt, or is pleaded in bar, or is offered in evidence as a defence, under the general issue, it is, as a general rule, conclusive, and not open to be impugned in another hearing by the testimony of witnesses, on account of what Lord Coke calls "the absolute verity of the record." Cheshire Bank v. Robinson, 2 N. H. 126, 128; Snow v. Prescott, 12 N. H. 535;· Tilton v. Gordon, 1 N. H. 33; 9 Johns. ·233; [Barr v. Gratz's Heirs] 4 Wheat. [17 U. S.] 215; [Davis v. Wood] 1 Wheat. [14 U. S.] 7. The various exceptions in such cases, growing out of the want of jurisdiction in the court

rendering the judgment, or of fraud in procuring it, or of the parties and point being in some respects different, need not be considered here, as the present is not the case of a domestic judgment, nor are any of those exceptions relied on. Robinson v. Crowninshield, 1 N. H. 76; Farmer v. Stewart, 2 N. H. 97. Secondly. Judgments rendered between the same parties, and on the same point in one of the United States, though foreign for most purposes, and not to be treated on general principles as domestic judgments (Story, Confl. Laws, § 501, 599), are provided for by the constitution (article 4, § 1). "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." This is almost a copy of a previous provision in the articles of confederation. Article 4. It was proposed, under the old articles of confederation, to make such judgments conclusive, but the motion was rejected. 1 Secret Journal of Cong. 346. It has happened, however, since, that the tendency of the decisions has been to place that construction on the clause as it now stands. And the better opinion seems to be, that by force of this clause all courts in the United States are bound to give their proper effect to the judgments rendered in other states of the Union, as fully as if they had been domestic judgments. 2 McLean, 129, 476 [Jacquette v. Hugunon, Case No. 7,169; Lincoln v. Tower, Id. 8,355]; Thurber v. Blackbourne, 1 N. H. 242; 19 Johns. 162; 15 Johns. 121; Hampton v. M'Connel, 3 Wheat. [16 U. S.] 234, and note; Mills v. Duryee, 7 Cranch [11 U. S.] 481, 486; Armstrong v. Carson, [Case No. 543]. But, however that may be, it is not material here for a guide, as in this case the judgment offered was not rendered in one of the states of this Union, but in an adjoining British province. It is then open to all the objections and proofs which are applicable to any foreign judgment. In relation to foreign judgments, some cases maintain, that they are in all respects to be treated as domestic judgments, while others insist on various exceptions or qualifications; and, among them, one broad enough to render the parol evidence competent, which was offered in the present case.

My own impressions in relation to foreign judgments are these:—They do, like domestic ones, operate conclusively, ex proprio vigore, within the governments in which they are rendered, but not elsewhere. When offered and considered elsewhere, they are, ex comitate, treated with respect, according to the nature of the judgment and the character of the tribunal which rendered it, and the reciprocal mode, if any, in which that government treats our judgments, and according to the party offering it, whether having sought or assented to it voluntarily or not, so as to give it in some degree the force of a contract, and hence to be respected elsewhere by analogy according to the lex loci contractus.

With these views, I would go to the whole extent of the cases, decided by Lords Mansfield and Buller; and where the foreign judgment is not in rem, as it is in admiralty, having the subject-matter before the court, and acting on that rather than the parties, I would consider it only prima facie evidence as between the parties to it. Sinclair v. Fraser, 1 Doug. 5, note; Walker v. Witter, Id. 1; Hall v. Odber, 11 East, 124. And though it would, in my view, have been safer to hold the same doctrine in admiralty decisions, yet the precedents are very strong in favor of their being conclusive. But other decisions of foreign courts on property, where the property is without their jurisdiction, do not bind it, though the parties themselves were before the court. 2 Conn. 627; Story, Confl. Laws, § 552; 2 Rawle, 431; 2 Paige, 402; 1 Dowl. & R. 35. This is the case especially as to real estate; and it was settled in respect to the property of a testator, whether real or personal, which was situated abroad in another government, though the testator was domiciled where the action was brought. Aspden v. Nixon, 4 How. [45 U. S.] 467. As it is not necessary to decide in respect to judgments in rem, for the purpose of disposing of this case, I will not go into all the considerations which are so strong against their uncontrollable validity, where rendered by courts or in countries extending no reciprocal courtesy to us, and where, as in Algiers or Turkey, the law of nations is as little understood as it is respected. Indeed, in some cases, exceptions like this last seem to have been applied to them. Sawyer v. Maine F. & M. Ins. Co., 12 Mass. 291. But the general rule is the other way. Holding, however, in personal actions, that the foreign judgment is only prima facie binding, we violate no settled principle, and, in respect to precedents, we go back to a golden age of the law, and retrace our steps here, as has been done in England, from some unwise departures from the ruling on this subject in that age. See, for this rule, beside the cases before cited, 1 Camp. 63; 9 East, 192; Houlditch v. Donegal, 8 Bligh (N. S.) 338; 2 Conn. 627; Taylor v. Bryden, 8 Johns. 133; 1 Mass. 401; 8 Mass. 273; 9 Mass. 462; 11 Mass. 265, 4 Cow. 523; 3 Fairf. 94–108; 4 Metc. [Mass.] 333, 343; 1 Starkie, Ev. 214, note; Story, Confl. Laws, §§ 606, 608; 2 Kent, Comm. 118. See, against it, Alivon v. Furnival, 1 Cromp., M. & R. 277; Martin v. Nicolls, 3 Sim. 458, decided in 1830, and 4 Maule & S. 20, and 2 Barn. & Adol. 953, and decided in 1831, but all overruled in 8 Bligh (N. S.) 341–345. By returning to that rule, we are enabled to give parties, at times, most needed and most substantial relief, such as in judgments abroad against them without notice, or without a hearing on the merits, or by accident or mistake of facts as here, or on rules of evidence and rules of law they never assented to, being foreigners and their contracts made elsewhere, but happening to be travelling through

a foreign jurisdiction, and being compelled in invitum to litigate there. Many of these, in my opinion, ought, by special legislation in all states, to be made grounds of relief against the conclusiveness even of a domestic judgment; and I know of few more causes of individual grievance in the present administration of the laws, where such special legislation does not exist, than the uncontrollable character of domestic judgments, which have been finally rendered, and then bind the parties forever, though one has in truth by accident or mistake never been heard; or never had the real merits of his case examined and decided. Considerations like these, probably, have led courts to get rid of their conclusiveness where possible, as in Snow v. Prescott, 12 N. H. 535, treating a payment made, but not indorsed and allowed in a judgment on the debt, not as barred, as in Tilton v. Gordon, 1 N. H. 33, but made on a promise to indorse, which not being done, rescinds the promise, and enables the payer afterwards to recover the money back. In case of foreign judgments, we are fortunately enabled, by considering them only prima facie right, to let in relief in all suitable cases; and, at the same time, we are enabled, by restricting properly what shall obviate the prima facie evidence, to prevent two or three real trials of the same question,—that unnecessary litigation or multiplicity of suits, which is the chief argument in favor of making even a domestic judgment conclusive. Thus, under that rule, I would allow testimony to rebut the prima facie evidence, as has often been done, to show first, that the court rendering the judgment had no jurisdiction of the case, or gave no notice to the defendant; or that the proceeding was in law irregular. See, on this, Sawyer v. Maine F. & M. Ins. Co., 12 Mass. 291; 3 Wils. 303; 9 East, 192; [The Mary] 9 Cranch [13 U. S.] 144; 15 Johns. 121. In Rangeley v. Webster, 11 N. H. 299, it was held that a judgment recovered in another state, against a citizen of this without a personal notice or appearance, is a nullity. Bissell v. Briggs, 9 Mass. 462; Hall v. Williams, 6 Pick. 232; Whittier v. Wendell, 7 N. H. 257; 5 Wend. 148, 161; 13 Wend. 407. There it was held also to be equally void, whether set up as a defence, or sued on. 11 N. H. 299. 7 N. H. 257, cites, besides above authorities, 4 Cow. 292; 6 Wend. 447; 19 Johns. 162; 4 Conn. 380; 1 N. H. 242; 3 Mason, 251 [Flower v. Parker, Case No. 4,891]; [Hampton v. McConnel] 3 Wheat. [16 U. S.] 235.

Secondly. I would go still farther; and that is the matter chiefly questionable and in some degree novel, in respect to adjudged cases, and would allow the opposing party where a foreign judgment is sued, pleaded or offered in evidence, to rebut its prima facie force and obligation, by showing that the merits of the claim, now in controversy, were not in truth at all there considered and adjudged. And I would do that, whether it occurred by accident, or mistake, or any agreement of the parties, or any other excusable cause, as well as when it arose from the want of personal notice. The authorities nearest in point to support this last view are, in some cases, even of domestic judgments pleaded, and which, though not so extensive in their details as to reach all I propose, go quite as far as is necessary to cover the present case. Thus in Whittemore v. Whittemore, 2 N. H. 26, 30, it is held, that parol proof is admissible in case of general declaration, even on a domestic judgment, to show, that the subject-matter of the present suit was not actually litigated and settled there. Seddon v. Tutop, 1 Esp. 401; Id., 6 Durn. & E. [Term R.] 607; 2 Johns. 27; Hale, Com. Law, 43; 2 N. H. 129. So if the count or declaration be special, parol proof is admissible to show that the plaintiff held two demands of like character. 2 Chit. Pl. 216, note. See · other cases cited in 2 N. H. 30. So if there be two special counts, parol proof is competent, that one was abandoned or withdrawn and not tried, which is the present case. Wheeler v. Van Houten, 12 Johns. 311. See farther, in support of these conclusions, 8 Johns. 173; and Robinson v. Prescott, 4 N. H. 450. How does this stand in reason and principle? Why should we be required from comity only to respect a foreign decision, as on the merits, when in point of fact none was made on the merits? Extend comity to what? Not to the hearing of the merits, for there was no such hearing. Not to the learning, or uprightness, or wisdom of the foreign bench, for none of these were brought to the disposal of the merits in controversy. Nor would I permit the prima facie force of the foreign judgment to go far, if the court was one of a barbarous or semi-barbarous government, and acting on no established principles of civilized jurisprudence (4 Bligh, 341), and not resorted to willingly by both parties, or both not inhabitants and citizens of the country. Nor can much comity be asked for the judgments of another nation, which, like France, pays no respect to those of other countries, except, as before remarked, on the principle of the parties belonging there, or assenting to a trial there. Then the judgment should have a strong force, beyond one prima facie, as on a full trial there, a voluntary trial, and then bind as a species of contract of a high character perfected abroad, and hence to be governed by the laws there. On the other hand, by considering a judgment abroad as only prima facie valid, I would not allow the plaintiff abroad, who had sought it there, to avoid it, unless for accident or mistake, as here. Because in other respects, having been sought there by him voluntarily, it does not lie in his mouth to complain of it. Bradstreet v. Neptune Ins. Co. [Case No. 1,793]. Nor would I in any case permit the whole merits of the judgment recovered abroad to

be put in evidence as a matter of course, but being prima facie correct, the party impugning it and desiring a hearing of its merits, must show first, specifically, some objection to the judgment's reaching the merits, and tending to prove they had not been acted on. Or, by showing there was no jurisdiction in the court, or no notice, or some accident or mistake, or fraud, which prevented a full defence, and has entered into the judgment. Or, that the court either did not decide at all on the merits, or was a tribunal not acting in conformity to any set of legal principles, and was not willingly recognized by the party as suitable for adjudicating on the merits.

After matters like these are proved, I can see no danger, but rather great safety in the administration of justice, in permitting to every party before us, at least one fair opportunity to have the merits of his case fully considered, and one fair adjudication upon them, before he is estopped forever. So, I would allow such evidence as quick when the judgment is offered as a defence, as I would when a suit is brought to enforce it. The objection goes to its validity on principle in both instances, and the distinctions introduced by Chief Justice Eyre as to this in 2 H. Bl. 410, are not now deemed sound. Story, Confl. Laws, §§ 599, 602; 10 Johns. 561; [Gelston v. Hoyt] 3 Wheat. [16 U. S.] 246; [Thompson v. Tolmie] 2 Pet. [27 U. S.] 157; 13 La. 437. See also the cases before cited, and especially 11 N. H. 299. Such a fair adjudication, the plaintiff proposes to prove, has not been once had on the note now in suit; and to prove, also, that the contrary appearance of the record in this case has arisen from a mere accident or mistake, in not striking out the counts on the note after the note itself was by agreement withdrawn. I think he ought to be allowed to offer such evidence. That, and that only, we decide in the present case. In order to give him an opportunity to do that, my opinion is that the verdict should be set aside. New trial granted.