## Case No. 5,484.

### The GLOBE.

[13 Law Rep. 488; 3 Am. Law J. (N. S.) 337; 8 West. Law J. 241.]

District Court, N. D. New York. Dec. 18, 1850.[1]

ADMIRALTY—PROCEEDING IN REM UNDER STATE STATUTES—EFFECT—SALE ON EXECUTION—PRIORITY OF MARITIME LIENS.

1. A judgment in rem rendered in a court of the state of Ohio, in virtue of the act of the general assembly of that state, entitled "An act providing for the collection of claims against steamboats and other water crafts, and authorizing proceedings against the same by name," passed February 26, 1840 [38 Laws Ohio, p. 35], and the act explanatory thereof, passed February 24, 1848, is to be regarded as a nullity by judicial tribunals in other states. unless the owner of the vessel proceeded against appeared in the suit and had an opportunity to make a defence.

2. The title, if any, acquired by the purchaser at a sale of the vessel on execution, in virtue of such a judgment, is subordinate to the lien in favor of a material-man, conferred by the general maritime law of the United States and the act of congress of February 26, 1845, c. 20 [5 Stat. 726].

[Cited in Putney v. The Celestine, Case No. 2,541.]

3. A judgment recovered in a proceeding under the statute of Ohio, in a court of that state, for supplies, is not a bar to a subsequent suit in rem in admiralty, for the same supplies.

[Cited in Ashbrook v. The Golden Gate, Case No. 574.]

4. Quere—Whether the provisions of the statute of Ohio are not repugnant to the constitution and laws of the United States.

In admiralty.

I. T. Williams, Chas. H. S. Williams, and Mr. Talcott, for libellant.

Green & Havens, contra.

CONKLING, District Judge. This is an action against the steamer Globe for the value of certain supplies furnished by the libellant, William H. Glenny, at Buffalo, between the 13th of June, 1848, and the 10th of September, 1849, while the Globe was owned in the state of Michigan, enrolled and licensed at the port of Detroit, and employed in the business of navigation and commerce on the lakes. A claim was interposed by Joshua Maxwell, as owner, and a defensive allegation was brought in his behalf, in which it was pleaded that the Globe had, on the 26th day of April last, been sold and duly conveyed for the sum of $17,000 by Elisha T. Sterling; by whom, on the 9th day of March last, she had been purchased at a public sale made by the sheriff of Cuyahoga county, in the state of Ohio; that such sale was in virtue of an execution issued by the supreme court of Cleveland, on a judgment rendered in February last, in favor of the Cuyahoga Steam Furnace Company, for the sum of $3,836.40 damages, and $106.86 costs; that such judgment was recovered in a pro-

ceeding instituted on the 20th of September, 1849, against the Globe, under an act of the general assembly of the state of Ohio, passed February 26, 1840, and an act explanatory thereof, passed February 24, 1848, authorizing proceedings against steamboats and other vessels navigating the waters within or bordering on that state; which acts are set forth in extenso in the defensive allegation. And it is thereby also further pleaded that, during the same month of September, other suits of the same kind were in like manner instituted against the Globe, by other citizens of Ohio, wherein judgments were also recovered at the same term, and on which executions were successively issued to the sheriff of Cuyahoga county, all before the sale by him to Sterling. These judgments amounted in the aggregate to the sum of $13,442.50, leaving a balance of only $457.50 of the sum for which the Globe was sold; which sum was probably absorbed, chiefly, if not entirely, in poundage and interest. The claimant also further alleges that, on the first day of November, 1849, a proceeding of the same nature was instituted by the libellant against the Globe, in the same court, for the identical cause of action on which the present action is founded, and that a judgment was recovered therein for the sum of $522.02, besides costs. It is necessary here to observe that two other actions for supplies are pending against the Globe before this court, commenced simultaneously with this—the one by the firm of Willard & Munger, citizens of Buffalo, and the other by the Buffalo Steam Engine Company; which, by agreement of parties, were brought to a hearing conjointly with this; and in which the pleadings and allegations of the parties are the same as in this—the libellants in these two latter causes having also, simultaneously with the libellant Glenny, instituted proceedings and recovered judgments against the Globe under the Ohio statute. The aggregate amount of these three judgments is about $2,766.91; upon neither of which does it appear that any execution had been issued, nor has either been satisfied wholly or in part.

It is unnecessary to refer particularly to the evidence given at the hearing, because there is little controversy concerning the facts on which the rights of the parties depend. It appears that the supplies for which the libellant claims compensation were in fact furnished, and that he is therefore entitled to have their value decreed to him, unless the matters insisted on, as already stated, by the defendant, the truth of which is also established, constitute a valid defence. This, therefore, is the point to be determined. It was strenuously and ably argued by the counsel for the claimant, 1st, that in virtue of the sale by the sheriff of Cuyahoga county to Sterling, and of his subsequent sale and conveyance to the claimant. the latter acquired an absolute title to the Globe, dis-

charged of the maritime lien which the libellant is seeking in this action to enforce; and 2d, that, conceding the reverse of this proposition, the lien was extinguished, on the principle of transit in rem judicatam, by force of the judgment recovered by the libellant in Ohio.

The questions thus presented for decision are novel and important, and I have accordingly felt it to be my duty to bestow upon them a careful scrutiny and deliberate consideration.

The sale of the property of a defendant, by execution on a judgment in a personal action, invests the purchaser with such title and interest only as the defendant possessed at the date of the judgment or levy. If the defendant had no title, the purchaser acquires none; and if the property was previously incumbered, the incumbrance remains. There can be no doubt, therefore, that the lien or privilege conferred by the maritime law upon a material-man would still adhere to the ship, notwithstanding its sale by execution on a judgment against the owner. But it was argued by the counsel for the defendant, that the judgment under which the Globe was sold, was a judgment in rem, and that as such it was conclusive against all the world. That the suits in the Ohio court were, in form at least, against the Globe in specie, and therefore in rem, is certain. The first section of the act under which they were instituted, declares that for demands like those of these Ohio creditors, the vessel shall be liable; and by the second section it is enacted, that "any person having such a demand may proceed against the owner or owners or master of such craft, or against the craft itself." The third and fourth sections of the act prescribe the mode of proceeding against the vessel. A precipe is to be filed against it by name, accompanied by a bill of particulars verified by oath; whereupon a warrant is to be issued against the vessel, directing its arrest and detention until it shall be discharged by due course of law. The records produced at the hearing show that these creditors elected this form of remedy, and that the steps prescribed by the act for that purpose, were, or were intended to be pursued. Not only so, but, according, it seems, to the practical construction given to a provision contained in the sixth section of the act, that "the pleadings and proceedings shall be as in other cases," the Globe was personified in the pleadings, as the contracting party defendant—the materials and supplies being alleged to have been furnished at her request, and she being alleged to have promised to pay for them. She is represented, moreover, as having appeared by attorney, and pleaded the general issue and notice of set-off—no real person being named in the record as a party to the suit, except the plaintiff. The pleadings and judgment which led to the sale of the Globe were therefore literally in rem;

and it must be conceded, also, as a general rule, that what in the authorities, cited at the hearing, are denominated judgments in rem, are followed by the legal consequences ascribed to them by the defendant's counsel. The question is, whether this rule is applicable to the present case. This is denied by the libellant's counsel; who insist, in the first place, that the judgment was of no validity whatever, for want of any notice to the owner of the vessel; and they have referred to numerous authorities in support of this proposition. The authorities relied on by them consist of a series of decisions in the national and state courts, asserting, with one voice, the necessity of notice in some form, to the party to be affected adversely, by judicial proceedings in whatever form; and it is undeniable that when the rights of the litigants depended on a judgment, unless it appeared either that such notice had been given, or that the defendant or party in interest had in fact appeared and had an opportunity to defend his rights, the judgment has uniformly been treated as a nullity, by the courts both of England and of this country. Thus in the case of Fisher v. Lane, 3 Wils. 297, which was an action of assumpsit for goods sold and delivered, the defence was, that the money for which the action was brought had already been once paid, in consequence of a judgment and execution upon a foreign attachment in London against the defendants as garnishees, in a suit against Fisher, the plaintiff. But it appearing that no personal notice of the suit had been given to Fisher—the custom of London, as it was shown, not requiring such notice—although the judgment in the principal suit was not rendered until after four defaults, nor that against the defendants as garnishees, until after summons to show cause, the defence was overruled. "Customs of particular cities" observed Lord Chief Justice De Grey, "may deviate from the course of the common law, but a custom contrary to the first principles of justice can never be good; so this custom not to summon or give notice to a defendant in a suit commenced against him, is contrary to the first principles of justice, and (in my opinion as at present advised) cannot be good." A verdict for the plaintiff subject to the opinion of the court having been taken, the whole court concurred in this opinion, and gave judgment for the plaintiff.

In the case of The Mary the same doctrine is asserted by the supreme court of the United States. "It is," said Chief Justice Marshall, "a principle of natural justice, of universal obligation, that before the right of an individual be bound by a judicial sentence, he shall have notice, either actual or implied, of the proceedings against him." 9 Cranch [13 U. S.] 126, 3 Cond. R. 306. In the case of Bradstreet v. Neptune Ins. Co. [Case No. 1,793], referring to a case of seizure and condemnation under a municipal

law of Mexico, Mr. Justice Story declared it to be "a rule founded in the first principles of natural justice, that a party shall have an opportunity to be heard in his defence before his property is condemned." "If," he added, "a seizure is made, and condemnation is passed without any public notice of the proceedings, so that the parties in interest have no opportunity of appearing and making a defence, the sentence is not so much a judicial sentence, as an arbitrary sovereign edict. It has none of the elements of a judicial proceeding, and deserves not the respect of a foreign nation. It ought to have no intrinsic credit given to it, either for its justice or its truth, by any foreign tribunal. It amounts to little more, in common sense and common honesty, than the sentence of the tribunal which first punishes and then hears the party—'castigatque auditque.' It may be binding upon the subjects of that particular nation. But upon the eternal principles of justice it ought to have no binding obligation upon the rights or property of the subjects of other nations; for it tramples under foot all the doctrines of international law; and it is but a solemn fraud if it is clothed with all the force of a judicial proceeding. I hold, therefore, that if it does not appear, from the face of the record of the proceedings in rem, that due notice by some public proclamation, or by some notification or monition, acting in rem or attaching to the thing, so that the parties in interest may appear and make defence, and in point of fact the sentence of condemnation has passed upon ex parte statements without their appearance, it is not a judicial sentence, conclusive of the rights of foreigners, or to be treated, in the tribunals of foreign nations, as imparting verity in its statements or proofs." This language of Chief Justice Marshall and Mr. Justice Story was applied to the proceedings of foreign courts, and is to be considered as having been intended to refer especially to such proceedings. But language of the like import has been repeatedly held, and the principles it inculcates enforced, with respect to the judgments of the courts of other states. 1 Kent, Comm. (3d Ed.) 261, note c, and the case here cited. The constitution of the United States, it is true, declares that "full faith and credit shall be given in each state to the public acts, records and proceedings of every other state" (article 4, § 1); and congress, in pursuance of authority for that purpose conferred by the constitution, has, by the act of 26th May, 1790, c. 11 [1 Stat. 122], declared that such records and judicial proceedings, authenticated in the manner prescribed by the act, "shall have such faith and credit given to them in every court of the United States, as they have by law or usage in the courts of the state from whence the said records are or shall be taken." But this does not prevent an inquiry into the jurisdiction of the court, in which the orig-

inal judgment was rendered, to pronounce the judgment, nor an inquiry into the right of the state to exercise authority over the parties, or the subject-matter, nor an inquiry whether the judgment is founded in and impeachable for a manifest fraud. The constitution did not mean to confer any new power upon the states; but simply to regulate the effect of their acknowledged jurisdiction over persons and things within their territory. It did not make the judgments of other states domestic judgments to all intents and purposes; but only gave a general validity, faith and credit, to them as evidence. No execution can issue upon such judgments, without a new suit in the tribunals of other states. And they enjoy not the right of priority or privilege, or lien, which they have in the state where they are pronounced, but that only which the lex fori gives to them by its own laws, in the character of foreign judgments. Story, Confl. Laws, § 609; Story, Const. c. 29, § 1307; 1 Kent, Comm. 261, note c; McElmoyle v. Cohen, 13 Pet. [38 U. S.] 312; 1 Greenl. Ev. § 548; Id., and notes. To this extent, then, the judgments of other states are to be regarded as foreign.

Now the term "jurisdiction," when applied to a personal action, imports a rightful authority over the cause or subject-matter, and over the person of the defendant; and when applied to a proceeding in rem, it imports the like authority over the res, and, so far at least as the res is concerned, over the person. See 1 Greenl. Ev. §§ 540, 541, 651, and the cases there cited. In general, and with certain exceptions which it is unnecessary here to notice, jurisdiction over the subject-matter will be presumed. Rose v. Himely, 2 Cranch [6 U. S.] 241, 2 Cond. R. 98; Bloom v. Burdick, 1 Hill, 130. But, as already observed, no judicial tribunal can acquire a rightful jurisdiction over the person or thing without due notice of the proceeding; and this must appear in the record itself, or else it must be shown that the defendant or party in interest did in fact appear and have an opportunity to be heard in his defence. Bradshaw v. Heath, 13 Wend. 407; Bradstreet v. Neptune Ins. Co. [supra]; Sawyer v. Maine F. & M. Ins. Co., 12 Mass. 291, 295. But in the case before the court, no notice in any form appears on the face of the record, nor is it pretended that any was in fact given. Indeed, the act under which the proceeding took place, requires none; and this novel feature of the act is rendered still more remarkable by another provision contained in it, which purports to make the judgment to be rendered, in effect, a judgment in personam as well as in rem; by directing, in case of a deficiency of proceeds from the sale of the vessel, to satisfy the judgment, that "the balance shall remain to be collected on execution as upon other judgments." It does appear by the record, however, as already observed, that a gentleman

appeared as the attorney of the vessel, and it was admitted at the hearing that he was employed by her owner. The latter resided at the time at Detroit, in the state of Michigan, and his appearance by attorney affords an answer to the objection of want of notice, to the extent of his interest in the Globe.

After what has been observed, it is unnecessary to add, that, but for the appearance by attorney of the owner of the Globe, it would have been my duty to hold the judgment in question a nullity. If it is valid, it owes its validity, therefore, to a fortuitous circumstance not provided for or contemplated by the act, and would doubtless have been rendered if there had been no appearance in the case. It was, I perceive, for the precise amount claimed by the plaintiff, and this is all that could have been adjudged had the judgment been taken by default. It is upon the act itself, therefore, that the objection really falls.

We have seen why it is that notice is held to be indispensable to the exercise by judicial tribunals of a rightful jurisdiction; and why, when this ingredient is wanting, their judgments are without extra-territorial force. Is the great principle of justice by which this condition is enjoined, less obligatory upon the legislatures of the several states of the American Union, than upon their courts? It is declared by Chief Justice Marshall to be "of universal obligation." Can it, by any reasonable intendment, be supposed that the people of the state of Ohio designed to invest their legislature with authority to disregard it? And if they did, are such acts of legislation binding upon the judicial tribunals in other states? But it was intimated by the counsel for the claimant, that the extra-territorial obligation of this act might be maintainable, on the ground that every nation possesses the power of confiscation over all property situate or coming within its territories; and authorities were cited in support of this doctrine. I confess my surprise that such an argument should have been pressed into this discussion. Confiscation is either an act of penal justice for the punishment of great crimes against the state (Bl. Comm. 299), or the exercise of a belligerent right against the property of public enemies (Kent, Comm. 61–66); not the arbitrary seizure of the property of one person, whether citizen or stranger, for the benefit of another person. So long as it shall be the pleasure of the legislature of Ohio to suffer this act to remain unrepealed, and the courts of that state shall deem it to be their duty to carry it into effect, its unavoidable evils must be submitted to; but beyond the limits of that state there can be no obligation founded, either in law, justice, or comity, unnecessarily to aggravate those evils. It is my desire, not less than my duty, nevertheless, to abstain from any animadversions upon it, not required by the actual exigencies of the case before me; and if it is true, as it was further argued by the counsel for the libellant, that conceding the validity, in the ordinary sense of the term, of the judgment in question, it falls short of the legal effect attributed to it by the advocates of the claimant, it is unnecessary, so far as the sale of the Globe is concerned, to determine whether the judgment under which the sale took place, was valid or not. Was this, then, such a judgment in rem as is or can properly be held to work an indefeasible change in the thing proceeded against? The act itself furnishes no answer to this question. It is therefore to be determined by the application of general principles; and looking at it in this light, it does appear to me that the answer which ought to be given to it is not even doubtful.

The proceedings prescribed by the Ohio statute are sui generis, and therefore anomalous. They have some resemblance to the proceeding usually denominated "foreign attachment," and some also to that prescribed in the New England states, whereby the property of the defendant may be attached and held in custody on mesne process in a personal action to satisfy the judgment, if any, to be obtained by the plaintiff. But they differ essentially from both, and they are still more unlike the proceedings of a court of admiralty, or of the English court of the exchequer, in cases of municipal seizure, whose decrees and sentences in rem are said to be binding on all the world.

Law is said to be the perfection of reason. It would be strange, therefore, if the maxim "cessante ratione cessat lex" had not found a place among its axioms. Now the well known reason, why a judgment in rem is held to be conclusive upon all interests and titles in controversy before the court, is, that all persons having an interest or title in the subject-matter, are, in law, deemed parties; and they are deemed to be parties, because they are permitted, and, by the more effective forms of notice of which the case is susceptible, are summoned to become so in fact. The mode of procedure differs slightly in different countries. In this country it is as follows: If it is in behalf of the United States for a forfeiture, there must always have been a previous public seizure and detention of the thing proceeded against. This is followed, and when the proceeding is at the suit of a private person, the action is commenced by the exhibition in court of a pleading setting forth the grounds of the proceeding, and praying process of arrest and monition, which is accordingly issued. In virtue of the warrant of arrest, the marshal takes into his custody the vessel or other thing, and in obedience to the command of the writ of monition, which however is usually incorporated with the warrant, he posts a notice, embracing the substance of the libel, on a conspicuous part of the thing, and publishes it in one or more newspapers near

the place of arrest, calling on all persons having any right, title or interest in that thing, to appear in court on a certain future day, and assert their claims, on pain of being pronounced in contumacy and default. The right to do this by suitable allegations is fully recognised and guarded, untrammelled by technical niceties, not only during the pendency of the original suit, but until the final disposition of the proceeds of the sale of·the property, should a sale be decreed. Such, in brief, is the proceeding in rem, which is held obligatory in its results upon all the world. To those not familiar with it, it may seem to be an exception in this respect to the rule which limits the binding force of judgments at common law to the actual parties and their privies. But in reality it is not; for it binds only those who are at least potentially parties to it, and who have an opportunity, if they choose to avail themselves of the privilege, not only to contest the claims of the libellant, but to supersede him by setting up superior claims of their own. · After what I have already said of the proceedings prescribed by the Ohio statute, it is hardly necessary to add, that, with the exception of being in form a proceeding in rem instead of in personam, it is the reverse of that which I have described, and wholly wanting in the peculiar element on which the conclusive effect of the latter depends. Admitting, therefore, that this court is bound to treat the sale of the Globe to Sterling as valid, it follows, that to ascribe to it any efficacy beyond that of a sale on execution under a judgment recovered in an ordinary personal action, would be to ascribe to it an effect without a cause, and would, as I believe, be repugnant alike to law and to common sense. Such a doctrine would be less sweeping, and therefore less mischievous in its consequences, and might even appear to derive some countenance from analogy, if the remedy had been limited to those demands for which a lien is conferred by the maritime law. But the act not only makes no distinction between foreign and domestic vessels, but subjects all to "seizure" for debts contracted by the owner, steward, consignee or other agent, as well as by the master, "for injury done to persons or property by such craft;" and "for any damage or injury done by the captain, mate, or other officer thereof, or by any person under the order or direction of either of them, to any person who may be a passenger or hand" on board. The argument is, that a sale in virtue of a judgment for any one of these causes of action, has the effect of displacing and extinguishing the lien of a mariner or material-man, so highly favored in law as to be held paramount, not only to the title of a bonâ fide purchaser, without notice, but to that of the government acquired by forfeiture. To such a doctrine I cannot yield my assent.

But there is a farther objection to this part of the defense, not adverted to at bar, but which appears to me well worthy of consideration. The constitution declares that the judicial power of the United States shall extend "to all cases of admiralty and maritime jurisdiction;" and by the judiciary act of 24th September, 1789 [1 Stat. 73], the district courts are invested with "exclusive cognizance of all civil causes of admiralty and maritime jurisdiction." The constitution also confers upon congress power "to regulate commerce with foreign nations among the several states, and with the Indian tribes:" and this power is also held to be exclusive. The admiralty and maritime jurisdiction conferred by the constitution, having been held to be limited to cases arising on the high seas or on tide-waters, and experience having at length, as it was supposed, demonstrated the necessity of extending the admiralty forms of remedy to certain cases arising on the lakes, this was done by· the act of 26th February, 1845, c. 20 [5 Stat. 726]. These constitutional and legislative provisions do not interfere with the common law jurisdiction of the state courts, but leave the suitor at liberty to pursue his concurrent common law remedy in these courts, whenever he sees fit. But I doubt whether it is competent for a state legislature to interpose by creating new remedies unknown to the common law, and calculated to supersede and defeat those provided by the constitution and laws of the United States, thus exhausting the sources of federal jurisdiction, and, by local regulation, introducing discord and confusion where the common good requires that harmony and regularity should prevail. In this very case, but for this Ohio statute, the Cuyahoga Steam Furnace Company, on whose execution the Globe was sold, would probably have instituted a suit in admiralty in the district court of Ohio; and in that case all the Ohio and New York creditors with whom this suit has made us acquainted, could, at little expense, have intervened for their interest, and justice would not have been violated by the appropriation of the whole proceeds of the sale of the Globe to the satisfaction of the furnace company and of ·the other creditors who had the good fortune, by being on the spot, seasonably to learn that the Globe had been arrested, to the total exclusion of those, who, by their re-·moter residence, were left in ignorance. Indeed, as the suits in favor of the Ohio creditors were not simultaneously commenced, it was only because the Globe brought enough to satisfy them all, that some of them got paid at all; for it was shown at the hearing to be the practice, when several suits are instituted, to assign priority of payment to the parties according to the order of priority among them in point of time. The act, moreover, as already intimated, makes no provision for intervention at any stage, and when the vessel is once sold upon

a notice of ten days—the only notice required by the act—whatever balance of the proceeds may remain after satisfying the execution, is peremptorily directed by the act to be paid over to the owner by the sheriff, without, as I understand the act, any judicial order for that purpose, and without any provision, therefore, for ascertaining to whom the vessel really belonged. But a state law authorizing such proceedings must necessarily interfere, if it does not directly conflict, with the authority and policy of the national government; and it seems too obvious to require further demonstration, if the proceedings under the act in question are to have the conclusive effect attributed to them by the counsel for the claimant, that they will, to the extent of their operation, render that authority and policy nugatory. It should be remembered, however, that this act was passed in 1840, five years before the act of congress extending the admiralty forms of remedy to our inland waters; and it seems but reasonable, as it is but respectful, to hope that it will ere long be repealed—its objectionable provisions being supplied, if it should be deemed necessary, by giving a limited and carefully regulated lien in favor of ship-wrights and material-men, like that given by the laws of Pennsylvania, the New England states and New York, which may be enforced, as it generally is in the states I have mentioned, in common with the lien given by the general maritime law, by the district court of the United States.

It remains now to determine whether the judgment recovered by the libellant against the Globe, under the Ohio statute, is a bar to this action. It is obvious that this judgment is obnoxious to all the objections which have been urged against the validity of that under which the Globe was sold; and there is also a further objection arising from the alleged irregularity of the proceedings under the act in this instance. It is very clear that, if the judgment is without validity, it can be no impediment to the libellant's right to maintain this action. But for obvious reasons I choose to abstain from any further discussion on this point, unless it is necessary to the just decision of the case before me; and in my opinion it is not necessary. It has already been observed that the fund, arising from the sale of the vessel, was exhausted in satisfying the claims of the creditors; who, being prior in point of time, were entitled, by the laws of Ohio, to priority of payment. This, therefore, is not a vexatious suit—there being no pretence of satisfaction, either actual or potential; for it is unnecessary to re-assert the utter futility of the right which the act purports to secure, of resorting to an execution against any other property or against the person of the owner; nor can it be necessary to enter into a formal refutation of the suggestion that he may be sued on the judgment. It does not purport to be

a judgment against him, nor did he by his appearance to defend his interest in the Globe render himself personally amenable to the court. Bissell v. Briggs, 9 Mass. 468; Story, Confl. Laws, § 549; 1 Greenl. Ev. § 542. Precisely under what view of his interest it was that the libellant saw fit, during the pendency of the proceedings by the Ohio creditors, to institute his suit in Ohio, does not appear. It seems reasonable to conclude, however, that, hearing of these proceedings, he was induced by the fear of losing his demand, and the hope that by that means he might secure it, to try the experiment to which he resorted. It may, or may not, be a hardship to the claimant to be obliged to pay this debt; this depends on circumstances unknown to the court. But be this as it may, there can be no injustice in allowing the libellant to enforce the lien, which as a material-man he acquired in virtue of the act of congress and the general maritime law. He has, on his part, established a right, primâ facie, to a decree in his favor. The prior judgment is set up as a defence purely technical in its nature, having no equity to recommend it, and to result, if successful, in actual injustice to the libellant. On the other hand, it is an established general rule of law, that when any matter has once been put in suit, and decided upon in a court of competent jurisdiction, the same subject cannot again be brought into litigation. The reasons on which this rule is founded are (1) that no one ought to be twice harassed on account of the same cause of action; (2) that it is the interest of the public that there should be an end of litigation. In the case of a judgment recovered, as in the present case, on a contract, a further technical reason is also assigned; viz., that the plaintiff has, by his voluntary act, converted his contract into the higher security of a judgment, and that the contract has thereby become merged.

It is true, as argued at bar, that courts of admiralty are bound, in the exercise of the limited jurisdiction that belongs to them, to conform their decisions to the principles of equity, and in general to disregard mere technicalities. But there are some axioms of jurisprudence, so deeply founded in considerations of general expediency, that they ought to be enforced even at the occasional expense of particular injustice; and they accordingly are so by courts of equity, as well as by courts of law. And, considering the magnitude of the evils which the rule in question is designed and adapted to prevent, and the danger of relaxing it, there is great reason for classing it among those axioms to which I have referred. But, in order to determine its applicability to the case before the court, it is necessary to attend to one of the limitations which define its scope. This limitation excludes whatever may properly be denominated a "collateral or concurrent remedy." It is hardly

necessary to cite an authority for this proposition; but it is distinctly stated by Lord Ellenborough, C. J., in the following terms: "A judgment recovered in any form of action is still but a security for the original cause of action, until it is made productive in satisfaction to the party; and therefore, till then, it cannot operate to change any other collateral concurrent remedy which the party may have." Drake v. Mitchell, 3 East, 251, 258. To render a judgment recovered at bar, it must appear that the former suit was founded on the same identical cause of action. When it is on a contract, it must be on the same identical contract. Thus, if the contract be joint and several, the better opinion appears to be, that the judgment in an action against one is no bar to an action against all; and, on the other hand, that a judgment against all, jointly, is not a bar to a subsequent action against one alone. 1 Greenl. Ev. § 539a; U. S. v. Cushman [Case No. 14,908], and the authorities there cited, particularly Lechmere v. Fletcher, 1 Cromp. & M. 623. So also it has been held, that a judgment in an action of covenant on a mortgage is no bar to an action of debt on the accompanying bond. Another qualification of the rule is, that a party is not to be concluded by a judgment recovered in a prior suit or prosecution, when, from the nature and course of the proceedings, he could not avail himself of the same means of redress which are open to him in the second suit. 1 Greenl. Ev. § 524. Though it is true, therefore, with respect to real as well as personal actions, that a judgment is a bar to another action of the same or the like nature for the same thing, yet this is true only where the second action is of the same or of inferior degree; for if it is of a higher nature, the former judgment is not a bar. A judgment in either of the other forms of real action, therefore, is no bar to a writ of right. Kitchen v. Campbell, 3 Wils. 304, 305.

These principles and the reasons on which they rest are, in my judgment, decisive against the operation of the former judgment in the present case. The action was against the Globe, in specie; the cause of action, as set forth in the declaration, being an assumpsit by the vessel herself. The proceeding had its origin and its sanction in a local municipal law alone. The very foundation of the action was a fiction, which was rendered effective by a form of procedure unknown to the common or civil law. It was a proceeding in rem, not in the ordinary sense of that phrase, and is to be so denominated only because it acted directly upon a thing instead of a person. The means of redress it promised consisted in the right to have the particular thing proceeded against, sold subject to all valid antecedent incumbrances, and to receive the proceeds of the sale if any should remain after satisfying all prior claims upon the fund. Neither the person nor any other property of the owner could be reached through the judgment to be obtained. As a security, therefore, the judgment was inferior to a judgment against the owner of the vessel in a personal suit, and it will not be pretended that such a judgment would be a bar to this action. On the contrary, the present action is grounded on a lien or privilege conferred by the general maritime law of the United States, extended by force of an act of congress to the lakes. This lien results from an implied hypothecation of the vessel by the act of the master; and it has priority over all common law liens; over the title acquired by purchase or by forfeiture; and it yields only to the lien of the mariner derived from the same source. I am of opinion, therefore, that this action is to be regarded as a collateral concurrent remedy, to which the libellant had a right to resort notwithstanding the former judgment. There must accordingly be a decree in his favor, and a like decree in each of the other actions which I have mentioned, for the sums proved or admitted at the hearing to be due to the libellants respectively.

[Subsequently, on appeal to the circuit court, the decree of the district court was reversed, and the libel dismissed, with costs. Case No. 5,483.]