HILTON *et al. v.* GUYOTT, Official Liquidator, *et al.*

*(Circuit Court, S. D. New York.* April 28, 1890.)

1. FOREIGN JUDGMENT—WHEN CONCLUSIVE.

   A foreign judgment *in personam*, rendered in a court of a civilized country having jurisdiction of the subject-matter, in a cause involving the consideration of ordinary mercantile transactions between the parties, and in which the defendant, one of our citizens and not domiciled there, appeared and defended for the purpose of protecting his property from seizure, cannot be impeached when sued on here. though the defendant was at the trial of such cause denied the benefit of our rules of evidence and procedure, and though the judgment was based on false testimony, and was erroneous.

2. EQUITY PLEADINGS—PLEA.

   Where one sued upon a foreign judgment brings a bill in aid of his defense, setting up the erroneous character of the foreign judgment, and praying discovery to enable him to establish the facts, the defense that the foreign judgment is conclusive. having been rendered in a court having jurisdiction both of the parties and of the subject-matter, may properly be presented by plea unsupported by an answer, when the jurisdictional facts do not appear in the bill, and when the facts which an answer would tend to prove may be treated as proved in impeachment of the plea, without destroying the defense pleaded.

In Equity. On plea.

*James C. Carter* and *Horace Russell,* for complainants.

*W. D. Shipman* and *William G. Choate,* for defendants.

WALLACE, J. The defendants have interposed a plea to a bill of discovery, and the plea has been set down for argument. The defendants are the representatives of Fortin & Co., and have brought a suit at law in this court against the complainants, who compose the firm of A. T. Stewart & Co., upon a judgment rendered in a court of France in favor of Fortin & Co. against Stewart & Co., for a money recovery in the sum of $195,122, and Stewart & Co. have filed the present bill in aid of their defense in the action at law. It is alleged in the bill that the complainants are not indebted on account of the matters for which the judgment was obtained by Fortin & Co., and that Fortin & Co. are indebted to them in a considerable sum, for which they are entitled to a judgment in their favor. All the facts to sustain these averments are set forth, and the bill alleges that the complainants have set up these facts by way of defense and counter-claim to the suit at law; and the bill prays for a discovery, upon interrogatories annexed, to enable the complainants to establish the facts. The bill also contains averments by way of anticipation of the defense, and sets forth facts which are intended to show that the judgment of the French court is re-examinable, and that the complainants are at liberty to contest the merits of the original controversy. These averments are, in substance, that the suits which resulted in the judgment were brought by Fortin & Co. against Stewart & Co. before the tribunal of commerce of Paris, upon matters of contract and account arising from dealings between the two firms at Paris and New York; that when the suits were commenced the members of Fortin & Co. were citizens of France, and domiciled there, and the members of Stewart & Co. were citizens of New York, and were not within or resident within the

jurisdiction of the court; that Stewart & Co. had property in France liable to seizure by the process of the court, and were obliged to appear and defend the suits brought against them to protect it from seizure, and were obliged, in order to defend the suits, to bring cross-suits to establish counter-claims against Fortin & Co.; that the trial of these controversies was unfairly conducted, the witnesses not being sworn or affirmed, hearsay evidence being received, and the right of cross-examination of witnesses, and of compelling the production of books and papers, being denied, against the protests and to the prejudice of the complainants; that false testimony was given on the trial by Fortin & Co., and books and evidence fraudulently suppressed by them, and in consequence thereof the court was misled in regard to the merits of the controversy; and that the judgment was based upon false and fraudulent accounts and statements made by Fortin & Co., and is erroneous in fact and in law. The plea avers, and sets up the facts necessary to show, that the suits brought by Fortin & Co. were commenced and prosecuted in a court having jurisdiction of the subject-matter, and that Stewart & Co. duly appeared therein by attorneys and counsel, and brought several suits in the same court against Fortin & Co., claiming affirmative relief; that the several suits were consolidated, and a final judgment rendered in all; that both parties appealed to the court of appeals of Paris from the judgment of the tribunal of commerce of Paris, and the judgment now sued upon in the action at law is- the final judgment rendered by that court upon such appeal. The plea avers that the suits in both tribunals were prosecuted and conducted in all respects in accordance with the course of practice and procedure prescribed for such tribunals by the laws of France, and that the final judgment of the court of appeals of Paris judicially decided and determined all the claims, matters, and controversies between the parties.

The defense interposed is properly brought forward by a plea, and, if the judgment concludes the parties, it is an efficient bar to the relief sought by the bill.

Although the bill sets forth the recovery of the judgment, it omits facts affecting the jurisdiction of the court, and the judicial character of the trial, which would preclude the defendants from having the benefit of their real case upon a demurrer, and the defendants could not properly and fairly protect themselves by asserting their judgment as a bar without supplying in their plea the facts which do not appear in the bill. It belongs to the class of anomalous pleas. It is not necessarily to be overruled, because it is not supported by an answer. A plea which contains in itself a full defense to the bill need not be supported by an answer, whether the bill does or does not aver facts for the purpose of avoiding the anticipated defense. It was formerly otherwise, in cases where the anticipatory averments of the bill were sufficient to overthrow the equity of the defense. An anomalous plea is only good against the original subject-matter which constitutes the equity of the bill, and is ineffectual against the supplemental matters averred to anticipate and avoid the defense; and therefore the matters in avoidance are not only

required to be denied in the plea, but by the former practice were required to be sustained by a full answer in respect to any discovery called for. Adams, Eq. 338. In modern practice, even though the bill contains such anticipatory averments, no answer in support of the plea is necessary, unless discovery upon interrogatories is called for. *Dawson* v. *Pilling*, 17 Law J. Ch. 394; *Webster* v. *Webster*, 1 Smale & G. 489. If interrogatories are annexed to the bill, respecting material anticipatory facts, as to which the answers might tend or be evidence to countervail the plea, then the plea must be supported by an answer. The rule is stated in Heard, Eq. Pl. 92, as follows:

"If the bill admits the existence of a legal bar, but alleges some inequitable circumstances to avoid its effect, and interrogates as to those circumstances, it is not enough for the defendant to plead the legal bar. He must accompany his plea with a distinct answer and discovery as to every circumstance as to which he is interrogated, the admission of which may tend to invalidate the plea."

This is necessary, because, upon the argument of a plea, every fact stated in the bill, and not sufficiently denied, must be taken to be true, (*Bogardus* v. *Trinity Church*, 4 Paige, 178,) and the denial of every material fact must be as full and complete as the bill requires. The complainant may read the answer to counterprove the plea, and is entitled to the facts he can elicit by his interrogatories, instead of the conclusions of the pleader; consequently when interrogatories are filed, and are not answered, the defendant loses the benefit of any denial in his plea of the matters as to which he is interrogated. The rule is that a defendant must answer as to facts which would be evidence to dispute the plea, but he is not required to answer to those things which may be well admitted consistently with the bar pleaded. If he does not answer interrogatories, upon the argument of the plea, every fact which they would tend to prove is treated as proved in impeachment of the plea. But if a plea sets up a defense which appears to be a good bar, notwithstanding all these facts are admitted to be true, it is not necessary to support it by an answer. The interrogatories annexed to the present bill mainly relate to the merits of the original controversy between Stewart & Co. and Fortin & Co., and call for a discovery of facts for the purpose of showing that Stewart & Co. were not indebted to Fortin & Co., and that the latter are indebted to the former. The other interrogations call for evidence of what took place on the trial of the suit in the French tribunal.

Tested by the rules which have been adverted to, the plea must be taken as admitting that when the suits were commenced against Stewart & Co., none of the members of that firm were or could have been personally served with process, but they were compelled to appear to protect their property in France from seizure; that they did not by their cross-suits invite the jurisdiction of the French court; that on the trial of the suit they were denied the benefit of the rules of evidence and procedure which obtain in the courts of this country; that Fortin & Co. fraudulently suppressed evidence and gave false testimony upon the trial, and the court was misled thereby, to the prejudice of Stewart & Co.; and

that the judgment is erroneous, and should have been in favor of Stewart & Co. for a large recovery. If the plea is good, it must be sustained upon the ground that the judgment of the French tribunal, notwithstanding these impeaching facts and circumstances, is not now re-examinable. The facts alleged in the bill are not inconsistent with the averment of the plea that the trial was conducted pursuant to the regular course of practice and procedure in the courts of France; and the interrogatories, if answered, would not tend to contradict that averment.

It is conceded by all the authorities that such a judgment may be impeached for fraud, because fraud avoids judgments as well as contracts of every nature. But the term "fraud" is indefinite, and when it is said that a judgment is vitiated and may be nullified by fraud it is not to be understood that the fraud which consists in false testimony, or the suppression of the truth, in respect to matters litigated upon the trial of the action which resulted in the judgment is sufficient to have this effect. It was said in *U. S.* v. *Throckmorton*, 98 U. S. 61, 68, "that the mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases." The court adjudged in that case that fraud of this description would not authorize the re-examination of a judgment, and the decision was placed upon the principle applicable to all domestic judgments, which is that the fraud which nullifies a judgment or decree cannot be predicated of false testimony, or forged documents, in respect to the disputed matter which has actually been presented to or considered by the appropriate tribunal. *Vance* v. *Burbank*, 101 U. S. 514; *Moffat* v. *U. S.*, 112 U. S. 32, 5 Sup. Ct. Rep. 10. The contrary was held in *Abouloff* v. *Oppenheimer*, 10 Q. B. Div. 295, where the suit was upon a Russian judgment, and the defense was, in substance, that the judgment was obtained by false testimony of the plaintiff as to a fact in issue upon the trial which misled the court; and it was held that this was a good defense. The authorities cited in the opinions of the judges, however, do not sustain any such doctrine, being cases in which no such question was discussed, like *Ochsenbein* v. *Papelier*, L. R. 8 Ch. 695, where the fraud was entirely extrinsic to the trial, and *Bank* v. *Nias*, 16 Adol. & E. (N. S.) 717, where the foreign judgment was held to be conclusive, and the particular question did not arise and was not alluded to. In Bigelow on Estoppel (5th Ed. p. 307) the proposition is stated thus:

"Indeed, there is no doubt that it may be shown, against a foreign judgment *in personam*, that it was obtained by some fraud not involved in the examination of the merits of the case, such as preventing the complaining party from presenting the merits of his case, or imposing upon the jurisdiction of the court, or corruption of the court, or collusion between counsel, or the like. But it would seem to be a sound view of the law that this should be the limit, as appears to be the case in regard to questions of fraud relating to domestic judgments."

If a foreign judgment cannot be impeached for fraud of this kind, committed by the party who obtained it, much less would there seem to be any reason, when the judgment is obtained in a court of a civilized country, for impeaching it because in matters of evidence or procedure, not relating to jurisdiction of parties or subject-matter, the trial was conducted by rules and usages differing from those of our courts. The methods of investigation in different countries are adjusted to the conceptions of expediency and propriety that prevail in each, and it would be mere bigotry to assert that, upon the whole, the truth of disputed facts is not as well ascertained in France or Holland or Germany as it is in England or the United States. Our law of evidence is largely a series of negations, sedulously framed, to exclude from consideration all *indicia* of the truth which do not fall within the class of those it regards as competent and safe, while in continental countries a larger latitude of investigation is indulged. In matters of evidence and procedure, to say nothing about the weightier matters of law, the wisdom of yesterday is the folly of to-day; and it is doubtful whether our present methods do not differ as greatly from those of the recent period, when parties were not permitted to testify, as they do from the methods of continental countries. Who can say with reason that our system of investigation is more infallible than that of France; or that a French citizen, sued here, could not as justly complain of our rules of evidence, or of a bill of discovery which compels him to exhibit his case in advance to his adversary, as one of our citizens sued in a French court could of the methods of procedure there?

The judgment is not deprived of the usual efficacy of foreign judgments because the complainants did not owe allegiance to France, and were not originally amenable to the jurisdiction of the tribunal of commerce of Paris. The complainants appeared in the suits, and submitted their rights to the investigation of that court and of the appellate court. They did this because they deemed it for their interest to do so; and surely so long as they were given an opportunity to contest the claims of Fortin & Co., and availed themselves of it, the circumstance that they were unwilling litigants cannot impair the jurisdictional sanctions of the judgment. *Rousillon* v. *Rousillon*, 14 Ch. Div. 370; *Voinet* v. *Barrett*, 55 Law J. Q. B. D. 39. They may not occupy the position of parties who have deliberately sought the jurisdiction of a foreign tribunal, compelled their adversary to litigate there, and, after litigating and being defeated, seek in the courts of another sovereignty to impeach the conclusiveness of the judgment; but they are in the category of those who have had a reasonable opportunity to be heard, and have been heard, upon the merits of their case. For these reasons, it seems that no exceptional grounds are found in the particular circumstances of the case for refusing to the present judgment the force and effect which foreign judgments ordinarily have in suits brought upon them in the courts of another country. The plea admits, however, that the adjudication was an erroneous one, and should have been in favor of the complainant for a large money recovery, instead of one against them. It is to be observed that the controversy

between the parties was wholly in respect to commercial transactions between them, growing out of the manufacture of gloves in France by Fortin & Co., and the sale of them in New York by Stewart & Co. as consignees for Fortin &,Co., and involved merely questions of general commercial law and of fact, concerning which the testimony was principally in France.    The case therefore presents the broad question how far a foreign judgment, not impeachable for fraud, and rendered by a court having complete jurisdiction of the parties and the subject-matter, is re-examinable upon the merits in a suit brought to enforce it here.    The question has been much discussed by the courts in England, and by the commentators here, with great diversity of opinion, and the result is summed up by Prof. Greenleaf as follows:

"The general doctrine maintained in the American courts, in relation to foreign judgments *in personam*, certainly is that they are *prima facie* evidence, but that they are impeachable.    But how far, and to what extent, this doctrine is to be carried, does not seem to be definitely settled.    It has been declared that the jurisdiction of the court, and its power over the parties and the things in controversy, may be inquired into, and that the judgment may be impeached for fraud.    Beyond this no definite lines have as yet been drawn." 1 Greenl. Ev. § 547.

The amount involved in this case is large, and the question is one of so much doubt and interest that the judgment of this court will doubtless be taken to the supreme court for review, whichever way the question may be decided; consequently it would seem to be quite useless to attempt in this opinion any extended discussion of the authorities or statement of the reasons for the conclusions reached.    At the time of the adoption of the constitution of the United States, the rule established by the decided weight of judicial opinion in the English courts was that a foreign judgment should be regarded merely as *prima facie* evidence of the debt, and that the merits were always re-examinable.    The earlier cases in the American courts followed the English authorities in recognizing the rule to be that foreign judgments were merely *prima facie* evidence of the liability established.    In some of them, notwithstanding the provision of the constitution of the United States giving full faith and credit in every state of the judicial proceedings of every other state, domestic judgments of another state were treated as foreign judgments, and were held to be re-examinable upon the merits.    *Hitchcock* v. *Aicken*, 1 Caines, 460; *Taylor* v. *Bryden*, 8 Johns. 133.    In others, and in the later cases with one or two exceptions, the question was as to the conclusiveness of domestic judgments, and the expressions in the preceding cases were reiterated *obiter;* and the effect to be given to foreign judgments did not receive the careful discussion which it subsequently underwent in the courts of England, and which led the English courts to recede from their former doctrine, and declare in favor of the general conclusiveness of such judgments.    Thus it may properly be said that, although the adjudications in this country are replete with *dicta* to the effect that foreign judgments are only *prima facie* evidence of indebtedness, the books contain very few cases in which the question

has been necessarily considered and authoritatively decided. It is sufficient to refer to *Bissell* v. *Briggs*, 9 Mass. 462; *Wood* v. *Gamble*, 11 Cush. 8; *Robinson* v. *Prescott*, 4 N. H. 451; *Taylor* v. *Barron*, 30 N. H. 95; *Williams* v. *Preston*, 3 J. J. Marsh. 600; *Aldrich* v. *Kinney*, 4 Conn. 382; *Graham* v. *Grigg*, 3 Har. (Del.) 408. In the late case of *Hanley* v. *Donoghue*, 116 U. S. 4, 6 Sup. Ct. Rep. 242, Mr. Justice GRAY says:

"Judgments recovered in one state of the Union, when proved in the courts of another, differ from judgments recovered in a foreign country in no other respect than that of not being re-examinable upon the merits, nor impeachable for fraud in obtaining them, if rendered by a court having jurisdiction of the cause and of the parties."

According to Mr. Bigelow, only two of the reported cases in the American courts (*Burnham* v. *Webster*, 1 Woodb. & M. 172, and *Rankin* v. *Goddard*, 54 Me. 28) are direct adjudications that such judgments are inconclusive. Bigelow, Estop. (5th Ed.) 264. Most of them, in which such judgments have been stated to be inconclusive, are cases in which domestic judgments were under consideration, or where the court rendering judgment did not acquire jurisdiction, or where the real question was whether a foreign judgment was not *prima facie* evidence of indebtedness. Besides the cases mentioned by Mr. Bigelow, two have been cited by counsel, those of *Anderson* v. *Haddon*, 33 Hun, 435, and *De Brimont* v. *Penniman*, 10 Blatchf. 436. *Anderson* v. *Haddon* seems to have been a case in which the judgment was obtained without any jurisdiction of the person of the defendant. In *De Brimont* v. *Penniman* the decree was a peculiar one, and Judge WOODRUFF assumed that it was not material whether the judgment was to be regarded as conclusive, or only as *prima facie* evidence of an indebtedness of the defendant; and he held that it was not *prima facie* evidence, because it only declared a conditional liability of the defendant, depending upon the continuance of a state of facts not alleged to be then existing, saying:

"There is no award of any sum certain, to be presently paid, and the declaration does not show that any sum whatever could even there (in France) be collected without a further application to the court."

Although the case of *Rankin* v. *Goddard* is treated by Mr. Bigelow as a direct adjudication that a foreign judgment is not conclusive, it seems only to decide the familiar propositions that the jurisdiction may be inquired into, or the judgment be impeached for fraud. See same case, 55 Me. 391. The case of *Burnham* v. *Webster* is a carefully considered judgment of the circuit court of the United States; but if the views adopted there were to be applied to the present case they would not necessarily lead to a re-examination of the merits of the original controversy. Mr. Justice WOODBURY declared in that case that he would allow the *prima facie* obligation of a foreign judgment to be rebutted by showing that the merits of the claim to the controversy were not in fact considered, owing to some accident, mistake, or agreement of the parties, or owing to any other sufficient excuse; that he would discriminate in favor of persons who had not willingly resorted to the courts of a foreign country, and against those persons who had voluntarily submitted themselves to such

courts; and that he .would not allow the *prima facie* obligation to go far, if the judgment was that of a court of a barbarous or semi-barbarous government, acting on no established principles of civilized jurisprudence.

If there are few authoritative rulings in this country which decide that foreign judgments are not conclusive when not impeachable for fraud or want of jurisdiction, there are few which decide that such judgments conclude an inquiry into the merits. Two cases adjudge the point directly; and it was held in *Lazier* v. *Westcott*, 26 N. Y. 146, and in *Baker* v. *Palmer*, 83 Ill. 568, that a Canadian judgment was entitled to the same conclusiveness when sued on here as a domestic judgment would be. The case of *Railway Co.* v. *McHenry*, 21 Blatchf. 400, 17 Fed. Rep. 414, did not necessarily involve the point, as it does not appear in that case that the defendant offered any evidence to dispute the debt, and the only question necessarily under consideration was whether the foreign judgment was *prima facie* evidence of the debt. The doctrine of the general conclusiveness of such judgments is maintained by the American commentators, among them some of our most distinguished jurists, and also by the more modern English cases, and it is placed upon the principle that one court should not permit the re-examination of a cause upon its merits when the party seeking to impugn the judgment has been fully heard, and the cause decided against him by another court. Mr. Justice Story (Confl. Laws, § 607) refers to the difficulties which would arise if a different doctrine were maintainable to the full extent of opening all the evidence and merits anew in a suit upon a foreign judgment when some of the witnesses might be dead, some of the vouchers lost, and the merits of the cause as originally presented re-examined upon a partial presentation of the evidence. He says:

"Indeed, the rule that the judgment is to be *prima facie* evidence for the plaintiff would be a mere delusion, if the defendant might still question it by opening all or any of the original merits on his side; for, under such circumstances, it would be equivalent to granting a new trial. It is easy to understand that the defendant may be at liberty to impeach the original justice of the judgment, by showing that the court had not jurisdiction; or that he never had any notice of the suit; or that it was procured by fraud; or that upon its face it is founded in mistake; or that it is irregular and bad by the local law,—*fori rei judicatæ.* To such an extent the doctrine is intelligible and practicable. Beyond this, the right to impugn the judgment is, in legal effect, the right to retry the merits of the original cause at large, and to put the defendant upon proving those merits."

And in *Taylor* v. *Bryden, supra,* Chancellor KENT, treating a domestic judgment as a foreign judgment, observed that to try over again, as of course, every fact which had once been decided by a competent tribunal, would be carrying the doctrine of re-examination to an oppressive extent.

The later English cases undoubtedly assert that foreign judgments, whether against English subjects or foreigners, when obtained in suits of which the foreign court had jurisdiction, and in which the defendant appeared, are in all respects as conclusive as the judgments of

their own courts. They take the ground that the courts of one country should not sit to rehear causes which have been tried in another, and that a party against whom a foreign judgment has been obtained should not be permitted to allege error in the judgment, and try the controversy over again, but should resort to the mode of review or retrial in the foreign forum which is provided for by every system of jurisprudence in civilized countries. They decide that any matters constituting a defense to the judgment, which might have been tried in a foreign court, cannot be again brought forward for the purpose of impeaching the validity of the judgment. This is the emphatic result of the more recent adjudications, although much diversity of opinion among the judges is found upon the general subject. *Scott* v. *Pilkington,* 2 Best & S. 11; *Martin* v. *Nicolls,* 3 Sim. 460; *Bank* v. *Nias,* 16 Adol. & E. (N. S.) 717; *Henderson* v. *Henderson,* 3 Hare, 100; *Godard* v. *Gray,* L. R. 6 Q. B. 139; *Schibsby* v. *Westenholz,* Id. 165; *Rousillon* v. *Rousillon,* 14 Ch. Div. 351; *Voinet* v. *Barrett,* 55 Law J. Q. B. D. 39; *Trafford* v. *Blanc,* 36 Ch. Div. 600; *Nouvion* v. *Freeman,* 37 Ch. Div. 244. In *Godard* v. *Gray* it was held that the judgment of a French court was not re-examinable, although the judgment proceeded on a mistake of English law in the construction of an English contract, which was apparent on the face of the judgment; and the principle of the decision was that a question of foreign law is a question of fact, and the party could not complain who had neglected to produce sufficient evidence to enable the court to decide it correctly. In *Voinet* v. *Barrett* it was held that the judgment was conclusive, notwithstanding the defendant was not registered or domiciled, or under allegiance to the foreign country, and appeared in the foreign court merely to protect his property from seizure in case judgment should be given against him by default; and the judges cited with approval *De Cosse Brissac* v. *Rathbone,* 6 Hurl. & N. 301, where it was ruled that if a defendant voluntarily appears in a foreign court, and takes the chances of a judgment in his favor, he is bound by a judgment against him. These adjudications ignore any considerations of comity as a factor in influencing the effect of foreign judgments. They rest wholly on the practical and sensible doctrine, which is applied to domestic judgments, that a litigant who had had a fair opportunity to try his cause before a competent tribunal, and has availed himself of it, should acquiesce in the result, and, if he has reason to complain, should pursue those means for correcting error provided by the jurisprudence of the tribunal, instead of resorting to another court. This is a much safer and more reasonable doctrine than that of the earlier adjudications, and if it works injustice in occasional instances, works less hardship generally, and promotes justice upon the whole.

It is not necessary to consider whether a foreign judgment against one of our own citizens served with process while casually within the country of the judgment, and who did not appear to defend, is not re-examinable in a suit brought upon it here; nor whether such a judgment would be enforced here, although the defendant litigated his cause in the foreign court, when it adjudges a liability which our laws do not sanc-

tion. It suffices to hold, and it is now held for the purpose of this case, that a foreign judgment *in personam*, rendered in a court of a civilized country having jurisdiction of the subject-matter, in a cause involving the consideration of ordinary mercantile transactions between the parties, and in which the defendant appeared and litigated, is, when sued on here, conclusive to the same extent that a domestic judgment is conclusive. Judgment is ordered for the defendants upon the plea.