**MANUEL v. KIDD et al.**

No. 16264. Opinion Filed July 26. 1927.

(Syllabus.)

1. **Appeal and Error—County Court as Court of Record—Probate Jurisdiction—Presumptions to Sustain Judgments.**

County courts of this state are courts of record and have original general jurisdiction in probate matters. The orders and judgments of such courts when acting within their jurisdiction are entitled to the same favorable presumption and the same immunity from collateral attack as are accorded orders and judgments of courts of general jurisdiction. Unless the record affirmatively shows want of jurisdiction, and every fact not negatived by the record is presumed in support of the judgment of a court of general jurisdiction, and where the record of the court is silent upon the subject, it must be presumed in support of the proceedings that the court inquired into and found the existence of facts authorizing it to render the judgment which it did. Bowling v. Merry, 91 Okla. 176, 217 Pac. 404.

2. **Guardian and Ward—Authority of County Court to Revoke Its Order Transferring Cause.**

Where a county court, under the provisions of section 1093, C. O. S. 1921, enters an order transferring a guardianship case, properly pending in that court, to another court, and thereafter on the same day revokes such order of transfer, held, that the court had the jurisdiction and right to revoke its order of transfer where no action or steps had been taken towards such transfer other than the entry of the order.

Action by C. C. Kidd against Bennie Manuel and others to quiet title and recover possession of certain real estate. Judgment for plaintiff, and defendant Manuel appeals Affirmed.

Commissioners' Opinion, Division No. 1.

Error from District Court, Creek County; John L. Norman, Judge.

Frank L. Lamb and McDougal, Allen & Pryor, for plaintiff in, error.

Blakemore & George and J. B. Sowder, for defendants in error.

LEACH, C. This action was originally filed in the district court of Creek county by the defendant in error, C. C. Kidd, against the plaintiff in error, Bennie Manuel, defendant below, and Arthur C. Lucas, Nancy N. Lucas. Fred E. Gates. and Hattie E. Gates. The parties will hereinafter be referred to as they appeared in the lower court.

The plaintiff, C. C. Kidd, in his petition filed in the district court of Creek county, Okla . alleged in his first cause of action, in substance, that he was the fee-simple owner of the legal title and the equitable rights and interest in, and entitled to the immediate possession of 80 acres of land located in Creek county. state of Oklahoma; that he acquired his title and right thereto under and by virtue of a certain guardian's deed. executed to him by the duly appointed. qualified. and acting guardian · of the person and estate of the defendant Bennie Manuel. a minor Creek freedman. and the original allottee of said property. That said guardian's deed was duly made and executed under and by virtue of an order and confirmation of the county court of Okmulgee county, state of Oklahoma; there being

attached to and made a part of the petition a copy of said guardian's deed and the allotment deed in favor of the said defendant Bennie Manuel. The plaintiff further alleged that the defendants Lucas and Gates claimed some right or interest in and to the lands described under and by virtue of a tax deed, and prayed that he be adjudged the owner of the legal title in fee simple and of the equitable title in and to the lands described, free and clear of all liens, claims, or incumbrances; that the defendants be declared to have no right, title, or interest or equity, and that they be barred and enjoined from asserting or claiming any interest or estate therein, and that plaintiff's title be quieted and confirmed.

For a second cause of action plaintiff alleges that the defendant Bennie Manuel was in possession of and living upon the land described, wrongfully and unlawfully, refusing to surrender the possession thereof, and prayed for the possession of said lands.

The defendants Lucas and Gates filed their answer in said cause, alleging ownership and title to the lands under and by virtue of a tax deed. A guardian ad litem was appointed for the defendant Bennie Manuel, and answer on behalf of the defendant Bennie Manuel was filed, generally denying the allegations of plaintiff's petition, except that he, the defendant, was the allottee of the lands involved, and further alleges and says that the guardian's deed set out in plaintiff's petition was void and of no force and effect for the reason that the county court of Okmulgee county never acquired or had any jurisdiction over the estate of the defendant Bennie Manuel; that he, the defendant, had never resided or had any estate within Okmulgee county; that purported jurisdiction of the county court of Okmulgee county was acquired by an order transferring or purporting to transfer said guardianship proceedings from the county court of McIntosh county, to the county court of Okmulgee county; that the county court of McIntosh county had previously transferred said guardianship proceedings to the county court of Okmulgee county, and therefore was without jurisdiction to make any further order of transfer; that the appointment of Fred DeVinna as guardian of the minor by the county court of Okmulgee county was void for the reason that no notice was given to the mother of said minor, who was the person in custody; that neither the mother nor the minors resided in Okmulgee county; that there were irregularities in said proceedings sufficient to avoid the sale which were jurisdictional; that notice to hear petition for sale was given for February 24, 1921; that upon the date of said hearing nothing further was done in said matter until April 21, 1921; that on said date an order was made which purported to continue said hearing from February 24, 1921, to April 21, 1921; that in fact no order of continuance was made on February 24, 1921; that the certain order purporting to continue said cause from February 24, 1921 to April 21, 1921, was indorsed, "Filed" April 21, 1921, as of February 24, 1921; that no notice of the hearing on April 21, 1921, was given to anyone, and that therefore the court was without jurisdiction on April 21, 1921, to make an order of sale.

For further answer defendant alleged and pleaded that all proceedings had in connection with said pretended sale of the lands and the issuance of the deed set forth in plaintiff's petition were affected and permeated with actual fraud, and therefore void, and that there things were known to plaintiff or might have been known to him had he made inquiry such as a reasonably prudent man would have made; that the facts in connection with the fraud were, in substance, that the mother of the minor received in the mail a copy of a notice to the effect that the guardian would ask the county court of Okmulgee county for an order directing him to sell the land involved, such hearing to be on the 24th day of February, 1921; that on said date she appeared before the said court in the forenoon and protested to the court against the sale of said land; that the court told her to see the guardian, which she did, and informed him that she would not consent to the sale, and did not want the land sold; that the guardian advised her to see his lawyer and tell him not to sell it, which she did, and the attorney for the guardian told her it would not be sold; that she returned to Okmulgee county where she lived, and that she did not hear or know anything further about the sale until she learned someone claimed to have bought it; that the minor, Bennie Manuel, nor his mother, knew anything about the supposed sale of the land, and was not in court when an order was made in connection therewith; that Rule 5 promulgated by the Supreme Court of this state relating to sale of lands of minors was not complied with; that the answer of the defendant Bennie Manuel further asserted he was in actual possession of said property and had been a long time prior to 1921 and prayed that plaintiff take nothing, and that his, the

defendant's, title be quieted, and for equitable relief.

Upon the issues joined a trial was had before the court, and judgment rendered in said cause in favor of the plaintiff, C. C. Kidd, adjudging and decreeing him to be the owner of the fee simple title in and to the land described, and entitled to the full and complete possession of said lands, and his title thereto quieted as against each and all of the defendants, except the court directed the payment by the plaintiff to the defendants Arthur C Lucas, Nancy N. Lucas, Fred E. Gates and Hattie E. Gates of the sum of $461 on account of the payment by them of certain taxes, penalties, interest, and costs, levied and assessed against the land involved in the suit, and they were decreed a lien against the land for such taxes and costs. No appeal was taken from the judgment in favor of the defendants Lucas and Gates and the same became and is final.

The defendant Bennie Manuel brings this action on appeal from the judgment of said district court and alleges and sets forth in his petition in error six specifications of error, which he discusses in his brief under five heads, which we will discuss in the order set forth in his brief, the first being "the court erred in holding that this was a collateral attack upon the judgment of the county court of Okmulgee county."

It has been repeatedly held by this court that county courts of this state have general jurisdiction in probate matters, and their orders and judgments will be accorded like force, effect, and legal presumption as other courts of general jurisdiction, and it will be presumed that all facts necessary for proper rendition of its judgments have been found to exist before judgment rendered, and where the record is regular the judgment cannot be attacked in a collateral proceeding. Bowling v. Merry, 91 Okla. 176, 217 Pac. 404; Johnson v. Furchtbar, 96 Okla. 114, 220 Pac. 612 ; Pettis v. Johnston, 78 Okla. 277, 190 Pac. 681: Ross v. Alworth, 105 Okla. 155, 231 Pac. 885.

This court, in McIntosh v. Holtgrave, 79 Okla. 63, 191 Pac. 739, said:

"A domestic judgment may be attacked in three ways:

"(a) By a direct attack, which is an attempt to avoid or correct it in some manner provided by law.

"(b) A collateral attack, which is an attempt to avoid, defeat, or evade it, or deny its force and effect, in some inciden-

tal proceeding not provided by law for the express purpose of attacking it.

"(c) By an equitable proceeding to set aside said judgment for fraud practiced by the successful party, said fraud inducing or entering into such order or judgment, where such fraud is extrinsic to the issues in the proceeding attacked, and especially where the court has been imposed upon by such fraud."

The court in that case, speaking through Justice McNeill, in the body of the opinion, further said:

"The confusion in the opinions has arisen by the courts attempting to determine whether an equity proceeding is a direct attack or a collateral attack, and upon this they disagree, and this is the basis for the confusion in the opinions in many cases, and upon which the courts disagree. One court, under a state of facts, will hold that an equity proceeding for fraud extrinsic to the issues is a direct attack, and set aside the judgment; another court will hold it is a collateral attack, under the same pleading and evidence, and hold the recitals in the judgment conclusive. In my judgment it is, strictly speaking, neither, but it is more in the nature of a direct attack. In my judgment, if the court would classify the different proceedings by which a judgment might be attacked under three classifications, to-wit: First, direct attack; second, collateral attack, and third, proceeding in equity, because of fraud extrinsic to the issues which prevented the complaining party from having a fair hearing—this would avoid much of the confusion."

Justice Rainey, in the case of Griffin v. Culp, 68 Okla. 310, 174 Pac. 495, in the opinion said:

"It is regrettable that there is considerable loose language and some apparent conflicts in our own decisions on this question that are very confusing to the bar and make it very difficult for the trial courts in some cases to apply the correct rule. In Brown v. Trent, 36 Okla. 239, 128 Pac. 895, it is held that an attack upon a judgment for fraud in its procurement is a direct attack over which courts of equity take jurisdiction, and in the case of Sockey v. Winstock, 43 Okla. 758, 144 Pac. 372, it is held that:

"'Where the judgment is void by reason of fraud practiced in obtaining it, and for like reasons a collateral attack may be made upon the judgment by a proceeding in equity, notwithstanding the court had jurisdiction of the proceedings resulting in the judgment attacked. By some of the authorities, it is held that this is a direct attack, but the weight of authority, supported by better reason. seems to be that it is a collateral attack, but, by reason of fraud, a collateral assault upon the judgment is permissible.'"

"The distinction in the two divergent theories is in name only. In any case if the matters alleged in the pleadings are permissible under the provisions of the Code hereinafter mentioned and a party to the action assails, by such pleadings, a judgment for want of jurisdiction because of fraud extraneous to the issues practiced upon the court or on the party against whom the judgment was rendered that prevented him from having a fair opportunity to present his case the same evidence is admissible in support of such pleadings whether the attack is denominated direct or collateral."

A similar holding is found in the case of Ward v. Thompson, 111 Okla. 52, 237 Pac. 569; Cochran v. Barkus, 112 Okla. 180, 240 Pac. 321; Jones v. Snyder, 121 Okla. 254, 249 Pac. 313.

The defendant's answer set up in the case at bar is not an attack on the judgment in any manner provided by law, and if maintainable must be one in equity, on the ground of fraud extraneous to the record by which the court was imposed upon in the proceedings, or by which the defendant was prevented from having his case fairly considered by the court.

"When it is said that a judgment is vitiated and may be nullified by fraud, it is not to be understood that a fraud which consists of a false testimony or a suppression of truth in respect to the matters litigated on the trial of the action which resulted in the judgment is sufficient to have this effect. Fraud such as will vitiate a judgment consists in preventing the complaining party from presenting the merits of his case, or imposing on the jurisdiction of the court, or corrupting the court or collusion between counsel" Hilton v. Guyott, 42 Fed. 249.

The case of Cochran v. Barkus, 112 Okla. 180, 240 Pac. 321, supra, was a case wherein the plaintiff Cochran filed his action in the district court to quiet title to certain lands acquired under guardian's deed, in which action the defendant Barkus, a minor, set up in his answer the following fraud in defense of the action:

" 'That the purported sale of the said lands above described by the said guardian, Dennie Foster, was fraudulent and was not made as by law required, and the purported guardian's deed, by which the plaintiff claims to have acquired title to the said lands, was insufficient to transfer title and to deprive this defendant of his interest in and to said lands; that said fraud consisted in the failure of the petitioner to allege and prove the statutory ground or grounds required for the sale of a minor's land by his guardian; in the failure to give the required notice to the parties required by the

statute to be notified of the hearing on said petition to sell the said lands, in the absence of a waiver of the same; that there was no sufficient waiver of said statutory requirements of said notice; in the failure to make the statutory proof of the posting the said notices required by law for said hearing; in the failure to prove and set out in the decree of sale a lawful ground therein sufficient to authorize the sale of the said minor's lands; in the failure to furnish to the court, prior to the said sale, as required by statute, any additional bond in connection with the said sale; by reason of which said acts and deeds the said purported sale of the said lands herein described were fraudulently taken from this defendant, and the said acts and deeds constituted and were a fraud on this defendant' "

—in which action the court, referring to the above pleading, said:

"We think it equally clear that the defendant should have been denied relief under his cross-petition. There was neither allegation, nor proof of fraud extraneous to the record, authorizing the trial court, in a collateral proceeding such as this was, to cancel the guardian's deed and award defendant the possession of the land."

In the case of Ward v. Thompson, 111 Okla. 52, 237 Pac. 569, supra, the same being a direct action filed by the plaintiff to cancel guardian's deed on the ground of fraud and other matters, the allegations of fraud relied upon and set forth in plaintiff's petition were as follows:

"Plaintiff further says that the said sale of the said land is void, for the further reason that the said M. T. Thompson fraudulently and wrongfully entered into a conspiracy and a wrongful and correct agreement with the said Henry Ward, to purchase the said lands at a grossly inadequate price, and in furtherance of same did on the 3rd of December, 1918, sign the guardian sale bond and that the purpose and act of the said Thompson in signing the sale bond, was to carry out his conspiracy with the said Henry Ward to cheat and defraud the said plaintiff out of the said property"

—to which pleading the court said:

"The additional sale bond and the return of sale showing the name of the purchaser were matters of record in the proceedings and must have been considered by the court on the hearing on the return of sale. It was also a matter of record in these guardianship proceedings that the land in controversy was purchased by the guardian for his ward, the plaintiff herein, in 1910, on order of the court, for $800, while the sale here attacked was made in 1918 for the sum of $2,000, no improvements having

been placed on the land during these eight years. This reflects no gross inadequacy of price, such as would shock the conscience of a court of equity, so that the elements of extraneous fraud, and the objects and purposes of the alleged wrongful and corrupt agreement between the guardian and the purchaser, are left entirely to conjecture.

"Such general and inconclusive allegations of fraud are insufficient. There must be allegations of material matters to which the court can point a finger and say: If the proof should sustain these allegations extraneous fraud would be established within the meaning of that term as defined by the authorities above cited."

In the case of Wray v. Howard et al., 79 Okla. 223, 192 Pac. 584, the same being an action to set aside and cancel a guardian's deed, the plaintiff, with other irregularities, alleged in his petition, in substance, the following:

"The defendant Howard fraudulently procured his appointment as plaintiff's guardian by falsely representing that said minor was a citizen of Tulsa county, and that as such guardian sold her lands to his codefendants for an inadequate consideration; that the county court of Tulsa county made the order appointing said guardian without giving 'the notice required by law,' and that the sale of the lands in controversy was made 'without any legal appraisement or actual view of the land'; that the purchaser at said guardian's sale was a business associate of said guardian; and that all of said defendants acquired their alleged interest with notice"

—to which pleading this court approved the action of the lower court in sustaining a demurrer.

The allegations of fraud set forth in the answer of the defendant Manuel in the case at bar, alleged fraud extraneous the record as follows:

"That sometime prior to February 24, 1921, the mother of the minor, Bennie Manuel, received in the mail a copy of a notice to the effect that on the 24th day of February, 1921 the pretended guardian, Fred De Vinna, would ask the county court of Okmulgee county for an order authorizing and directing him to sell 80 acres of the land of the said ward. That on February 24, 1921, she appeared before the said court in the forenoon of said day, shortly after court opened. That she protested to the court against the sale of the said land. That the court told her to see the guardian, Fred DeVinna. That she went to the drug store where the said DeVinna was employed and talked to him, the said De Vinna, and told him she would not consent to the sale and that she did not want the land sold. That DeVinna told her to see his lawyer, Judge

Lawrence, and tell him not to sell it. That she went to the said Lawrence and talked with him and told him that DeVinna had agreed with her that the land would not be sold. That he, the said Lawrence, told her that it would not be sold. That she returned to Okmulgee county where she lived and did not hear or know anything further about the sale until she learned that someone claimed to have bought the land. That the minor, Bennie Manuel, never knew anything about the proposed sale or about the selling of the land and was not in court when an order was made in connection therewith, and that the mother of said minor, Erah Grayson, was not in court at any time when any proceedings were had or any order was made in connection with the sale of the said land."

The evidence introduced by the defendant Bennie Manuel in support of the above pleading shows in substance that Erah Ervine, mother of the minor, received a notice of hearing from the court upon the guardian's petition to sell; that upon receipt of such notice she called upon the guardian and his attorney, advising them that she and the minor did not desire a sale of the land; that they advised her to go back home and they would notify her if they still wanted to sell it; that she received no further notice, and was not aware that the land had been sold until about a year afterward; that she, the mother, nor the minor, was ever present before the court upon a hearing of any petition to sell the land.

The minor testified that he was aware of the notice, but did not hear anything about the sale until a year after it was sold.

The pleading of fraud and the evidence in support thereof are not sufficient to bring the case within the rule laid down in the case of Johnson v. Furchtbar, 96 Okla. 114, 220 Pac. 612, and the numerous other cases in this court holding that the judgment and decree of a court of general jurisdiction cannot be attacked collaterally unless it is for fraud extraneous the record.

In the case of Provins v. Lovi, 6 Okla. 94, 50 Pac. 81, the court said:

"In a proceeding to vacate a judgment against a defendant for fraud practiced by the plaintiff in obtaining it, the petition must fully state the facts constituting the defense. Unless the facts stated show an existing, valid and meritorious defense, the petition is fatally defective." Mulvaney v. Lovejoy, 37 Kan. 305; El Reno Mut. Fire Ins. Co. v. Sutton, 41 Okla. 297, 137 Pacfl 700, 50 L. A. A. (N. S.) 1064.

In Biglow on Fraud, vol. 1, p. 115, we find this language:

"In like manner, a declaration in deceit must show not only what the fraud was and that the plaintiff had been injured, but also the connection of the fraud with the alleged damage, so that it may appear to the court whether the fraud and the damage sustained to each other the relation of cause and effect."

The allegations of fraud in this cause do not allege in what manner the defendant was damaged. There is no allegation that the defendant has been defrauded of the proceeds from the sale of the land in question, or that the property was sold for an inadequate price, or that the court had been imposed upon.

We are not unmindful of the holding of this court in the case of McIntosh v. Holtgrave, 79 Okla. 63, supra, cited in the brief of plaintiff in error. We think the facts there shown and the reasoning not applicable to the case at bar. In the case of McIntosh v. Holtgrave the fraud there alleged and shown was that some person other than the mother of the minor appeared before the court representing herself as the mother of the minor, and made representations for purpose of deceiving the court and defrauding the minor out of his property; also the more recent case of Jones v. Snyder, 121 Okla. 254, 249 Pac. 313, the same being a direct equitable action to set aside guardian's sale and deed, in which case fraud was practiced upon the court in matters respecting the domicile, custody, and parentage of the minor, and in which case the court in referring to the sale of the property of the minor said:

"* * * And said minor defrauded out of every penny of the proceeds, neither the minor nor his father having any knowledge of the proceedings."

The answer of the defendant in the case at bar alleged that the mother of the minor protested to the court against the sale of said lands. Why or upon what grounds is not shown. The order of sale recites that the minor was present in court. The trial court heard the evidence and found against the contention of the defendant that there was fraud sufficient extraneous the record to take the case out of the general rule that a judgment of a court of general jurisdiction cannot be collaterally attacked. We find no error, from an examination of the record, in the holding of the trial court in favor of the plaintiff on this issue.

The second proposition urged by defendant, plaintiff in error, is that the county court of Okmulgee county never had jurisdiction of

the guardianship proceedings of the estate of Bennie Manuel, and therefore any purported proceedings therein were void. The guardianship proceedings upon the estate of the minor had their inception in the county court of McIntosh county; upon a petition and notice the county court of McIntosh county, on the 21st day of June, 1915, entered its order transferring the guardianship proceedings to Okfuskee county, and, thereafter, on the same day, the court set aside said order transferring the guardianship proceedings to Okfuskee county. On September 14, 1918, the county court of McIntosh county, on application of the guardian, entered its order transferring the proceedings to Okmulgee county; the contention of the defendant being that the county court of McIntosh county having entered its order transferring said cause to Okfuskee county, thereby lost jurisdiction of the matter and could not revoke or set aside its order of transfer, and had no authority or power to make any order transferring said cause to Okmulgee county.

The record discloses and shows that the order of the county court of McIntosh county transferring the cause to Okfuskee county was entered on the 21st day of June, 1915, on application of the mother of the minor, as provided by section 1093, C. O. S. 1921, and on the same day, the 21st day of June, 1915, the court, upon application of the guardian, rescinded its order of transfer and thereafter exercised jurisdiction of the estate and matters as shown by the approval of the guardian's report filed in said matter on June 13, 1916. Thereafter, on the 22nd day of July, 1918, the guardian of said minor filed in the county court of McIntosh county his petition asking that the court make and enter an order of transfer of said cause to the county court of Okmulgee county on the ground that the residence and domicile of said minor had been changed from McIntosh county to Okmulgee county, and that it would be for the best interests of said minor to have said transfer made. The record discloses and shows that notice of application of such transfer was served upon the mother of said minor. On the 14th day of September, 1918, the county court of McIntosh county entered its order transferring said matter to the county court of Okmulgee county, and the order directing and approving the sale of the real estate involved in this action was later made and entered in the county court of Okmulgee county. It heretofore being found that this action is a collateral attack on the part of the defendant, doubtless, he could not, here and now, at-

tack the transfer of said cause to the county court of Okmulgee county, but we will further consider whether or not the county court of McIntosh county lost jurisdiction by reason of its first order of transfer to Okfuskee county. The statutes in force at the date of said order of transfer are sections 1091 and 1093 of the Compiled Oklahoma Statutes, 1921. Section 1093 reads as follows:

"In any case where it is shown to the court that the domicile of a minor or ward has been changed from the county where the guardianship is pending to another county in this state, the guardianship may, upon application verified by oath. after notice has been given to the next of kin of such minor or ward and upon good cause shown, be removed to such other county, which would be the proper venue, in the manner and upon the conditions prescribed in the second preceding section for the transfer of suits, matters or proceedings if the court finds that the domicile of a minor or ward has been changed in good faith and that such transfer would be for the best interests of such minor or ward."

The second preceding section referred to is section 1091, C. O. S. 1921, and reads as follows:

"When it is made to appear that any probate matter pending in any court of this state which, by acts of Congress and the Constitution, was transferred from the courts of the territory of Oklahoma, and the United States courts in Indian Territory to the courts of this state, is not in the county where the venue of such suit, matter, or proceeding would lie if arising after the admission of this state into the Union, the court where such suit, matter, or proceeding is pending shall, upon the application of the guardian, executor, or administrator, or any other person having a substantial interest therein, or upon its own motion, when a proper showing has been made for a removal. within twenty days after application is made therefor, make an order transferring such suit, matter. or proceeding to the county where the venue would properly lie. if such suit. matter or proceeding had arisen since the admission of this state into the Union, by transmitting to such county the original papers. together with certified copies of all orders and judgments, upon the payment of all accrued costs; Provided, that where any minor is the owner of an estate situated in a county or in counties other than that of his domicile and a guardian or curator has heretofore been appointed for such minor or his estate in any such county other than that of the domicile of such minor, such suit, matter or proceedings shall be transferred in the manner and upon the conditions herein provided, to the county of the

domicile of such minor; and Provided, further, that such original papers, together with such certified copies of all orders and judgments shall be filed in the court to which such matter is removed, and the same shall proceed as if ordinarily filed therein, without further service of notice."

We think the Supreme Court of this state has held adversely to the contention of the defendant in this cause. While not passing on the identical facts and statutes here presented, it has passed upon cases very similar, In the case of Simpkins v. Parsons, 50 Okla. 786, 151 Pac. 588, the court said:

"A court of general jurisdiction has authority to modify or vacate its judgments or orders during the term at which they are made. And an order granting a transfer of a civil action from one county to another is, under sections 542-544 of Snyder's Compiled Laws of 1909, a matter of judicial discretion; and the court has authority to vacate such order. at any time during the term at which it was made, provided, it is done before the court to which the transfer was ordered has acquired jurisdiction.

"The court to which a cause is transferred under the above statutes does not acquire jurisdiction of the cause until the papers and records are received by it. and entered upon its docket. And if a court makes an order transferring the case to another court, but vacates the order at the same term, and before the papers are thus transferred and docketed, it retains jurisdiction of the cause; and a judgment rendered by it in such action is not void."

The court in the above case quoted section 544, Snyder's Statutes (1909), which reads:

"As soon as the papers and records are received in any cause or procedure, as herein provided. the same shall be entered upon the docket of such court and process issued therein as in other cases originally brought in such court."

The court in that case further said:

"Which we take to mean that the court to which it is transferred acquires no jurisdiction. and has no authority to take any action, or issue any process in the case, until the papers and records are received and docketed."

Section 1091, C. O. S. 1921, contains these words:

"* * * That such original papers, together with such certified copies of all orders and judgments shall be filed in the court to which such matter is removed, and the same shall proceed as if ordinarily filed therein, without further service of notice."

In the case of In re Folsom's Estate, 57

Okla. 79, 159 Pac. 751, the same involving an appeal from the county court to the district court, wherein the district court dismissed an appeal before receiving any transcript as provided by section 6513, Rev. Laws 1910 (sec. 1422, C. O. S. 1921), this court said:

"Where notice is given and bond executed and approved for an appeal, in a probate matter, from the county court to the district court, the district court is without jurisdiction to dismiss the appeal until after the transcript provided by section 6513, Rev. Laws 1910, has been transmitted to the clerk of the district court to be filed in his office. * * *"

"When the appellant in an appeal, in a probate matter, from the county court to the district court, has neglected to have the transcript provided by section 6513, Rev. Laws 1910, timely transmitted to the clerk of the district court, the appellee may invoke the remedy provided by section 6516, Rev. Laws 1910, to have such transcript transmitted to the clerk of the district court, and thereby confer jurisdiction on the district court of such appeal."

In 40 Cyc. 171, 172, the rule is stated in these words:

"Except where the mere making of the order is held to divest the court of further jurisdiction, it may, either by consent of the parties, or for sufficient cause, and at the same term before the transfer is actually made, vacate or set aside its order in regard to a change of venue, and may reinstate the case for trial, or send it to a different county than that previously ordered."

Under section 1093, C. O. S. 1921, supra, the granting of the transfer is within the jurisdictional discretion of court and does not make it a thing which could be demanded by the applicant as a matter of right, and which the court would be compelled to grant. We therefore find that the county court of McIntosh county was within its power to vacate its former order of removal, it appearing no action had been taken in the cause except the order entered.

In the case of Burton v. Colley, 113 Okla. 265, 242 Pac. 185, this court, in an opinion by Mr. Chief Justice Nicholson, held that a guardian's sale could not be collaterally attacked because a county court of some county other than that granting the order of sale had previously acquired jurisdiction of the guardianship proceedings, such defect not appearing upon the face of the record, and quoted with approval the following:

"In Cox v. Boyce, 152 Mo. 576, 75 A. S. R. 483, the Supreme Court of Missouri held:

"'If the probate court of the county in which a minor resides takes jurisdiction of his estate and appoints a guardian, and, after such minor's removal to another county, the probate court thereof takes jurisdiction of the minor and his estate, and orders his real property sold, such sale cannot be collaterally attacked on the ground of exclusive jurisdiction of the first court, when nothing appears on the face of the record of the second court showing that the minor was a nonresident of that county or that the court acted without jurisdiction.'

"And in Thorp's Estate, 41 Pa. Co. Ct. 513, it was held, that where the appointment of a second guardian for the same ward has been inadvertently made by the orphan's court, without any fraud on the part of those concerned therein, and the second appointee had, in good faith, sold land of the minor under the direction of the orphan's court, and the purchaser thereof had, in good faith, paid the purchase money and entered upon and improved the land, the orphan's court would not revoke the second appointment or set aside the confirmation of the sale of the land."

The third proposition urged in brief of defendant, plaintiff in error, is: The county court of Okmulgee county did not comply with Rule 5 of the Probate Rules made by this court in July, 1914, "and a sale made without complying with said rule is void."

The Rule 5, referred to, is as follows:

"Petitions for the sale of land of minors and incompetents will be heard _____ _____ of each _____. On the hearing on petitions for sale, the guardian, person in custody, and the ward himself, when over fourteen years of age, must be present and must be examined as to the necessity for said sale and the truth of the allegations of the petition, and furnish such additional evidence as the court may require. The evidence offered must be taken down and transcribed and a copy thereof filed with the papers in the case. No bid will be considered by the court unless a certified check in the amount of ten per cent. (10 per cent.) of the amount of the bid be deposited either in court or with the guardian offering the land for sale."

We do not deem it necessary here and now to decide the above question. There is nothing in the record except the testimony of the defendant and the mother of the minor that Rule 5 was not complied with. The order confirming the sale recites that the minor was present in court.

The defendant cites in support of his contention above the case of Wynona Oil Co. v. Barnes, 83 Okla. 248, 200 Pac. 981, and other similar cases relating to rule 9 of this court.

In the Wynona Oil Case, supra, the defect complained of, that is, failure to comply with Rule 9, shows upon the face of the record, and was therefore subject to attack.

Where particular facts must be proven in order to confer jurisdiction upon a court to enter judgment, the presumption arises, when the validity of the judgment is attacked, that such facts were proven. Miller v. Madigan. 90 Okla. 17, 215 Pac. 742.

In 15 R. C. L., sec. 356, the following rule is stated:

"The general rule of law is that, when a court of competent jurisdiction has rendered a judgment in relation to any subject-matter within its jurisdiction the presumption arises that it had before it sufficient evidence to authorize it to award such judgment, and where facts required to be proved to confer jurisdiction that such facts were duly proved. although the record is silent on the matter." Pettis v. Johnston. 78 Okla. 277. 190 Pac. 681; Ross v. Breen, 88 Okla. 40, 221 Pac. 417; Bowling v. Merry. 91 Okla. 176. 217 Pac. 404; Hathaway v. Hoffman. 53 Okla. 72, 153 Pac. 184."

The record in the case at bar recites that the defendant was present and the presumption would be that the court complied with Rule 5. and its record is not subject to collateral attack except as herein stated.

Defendant. plaintiff in error, as a fourth proposition, says: The county court of Okmulgee county lost jurisdiction to consider the petition for sale when no hearing was had at the time appointed, to wit, February 24, 1921.

Upon the filing of a petition for the sale of real estate the statute provides (sec. 1471, C. O. S. 1921):

"* * * That the court or judge must thereupon make an order directing the next kin of the ward, and all persons interested in the estate. to appear before the court, at a time and place therein specified," etc.

Section 1473, C. O. S. 1921, provides as follows:

"The county court, at the time and place appointed in the order, or such other time to which the hearing is postponed. upon proof of the service or publication of the order, must hear and examine the proofs and allegations of the petitioner and of the next of kin, and all other persons interested in the estate who oppose the application."

From the above statute it will be observed that the court may continue or postpone the hearing until some other time. The record in this case shows that the order for hearing was set for February 24. 1921; that notice for hearing on that date was given; and as we understand the record discloses and shows that an order was made continuing the hearing upon petition to sell until a later date, such order being shown at page 181 of the case-made. The order of continuance or postponement shows "Filed April 18, 1921, as of February 24, 1921," by reason of which entry of filing the defendant concludes that no order of continuance was made. This conclusion we do not think is warranted by the record, and that the reverse presumption would be the proper rule.

Defendant, in his fifth proposition, says: "The purported guardian's sale to C. C. Kidd is void for fraud extraneous to the record and to which the plaintiff could have knowledge had inquiry been made," and under this proposition further urges that no order of hearing was given upon the petition to sell the real estate, and that by reason of the alleged defect appearing on the record, which defect we presume to be the matter of the filing mark on the order of continuance, that the purchaser was thereby put on notice of such defect. We have heretofore discussed and disposed of the matter of the fraud extraneous to the record and found. that the answer and evidence relating to fraud were insufficient to warrant a reversal of the finding of the trial court on that issue.

The mere fact that the order or journal entry of the order continuing the hearing upon the petition of sale shows "Filed April 18, 1921, as of February 24, 1921," is not such a defect as would warrant the assumption that the order was not made on the date which it recites it was made on, to wit. the 24th day of February, 1921.

In the case of Bowling v. Merry, 91 Okla. 176, 217 Pac. 404, the court, in discussing the matter of a nunc pro tunc order in said cause, said:

"It has been repeatedly held in Oklahoma, as well as in other states and in the United States Courts, that courts have the inherent right to correct their records and cause them to speak the truth where by inadvertence or mistake the clerk has failed or neglected to make the proper order. and mere lapse of time does not divest the court of this right. Wright v. Nicholson. 134 U. S. 136, 33 L. Ed. 865. Gonzales v. Cunningham. 164 U. S 612, 41 L. Ed. 572; Hyde v. Curling, 10 Mo. 359; State v. Clark, 18 Mo. 432; Nelson v. Barker, 3 McLean (U. S.) 379; State v. Bilausky. 3 Minn. 246; Bishop's New Crim. Proc. 1345: Runyan et al. v. Herrod et al.. 62 Okla. 87. 162 P. 196; Courtney et al. v. Barnett. 65 Okla. 189, 166 Pac. 207; Bd. of Commissioners of Day Co. v. State of Kansas. 19 Okla. 375, 91 Pac. 699."

In the case of Commissioners of Day Coun-

ty v. State of Kansas, 19 Okla. 375, 91 Pac. 699, it was said:

"A person interested in the proceedings of a court of record may appear before the court at any time and ask to have the journal of the court made correct and complete as of the date such record should have been made. * * *"

The sale in the case at bar having been confirmed, the record appearing regular upon its face, and finding no sufficient fraud extraneous of the record or otherwise, we hold that the judgment of the trial court should be, and is hereby affirmed.

BENNETT, FOSTER, TEEHEE, and REID, Commissioners, concur.

By the Court. It is so ordered.

Note.—See under (1) 15 C. J. p. 720, §5; p. 1010, §422; 34 C. J. p. 517, §823; p. 545 §844; 15 R. C. L. p. 885; 3 R. C. L. Supp. p. 503. (2) 40 Cyc. p. 171.